ORIGINAL

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ OCT 0 1 2009 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

VICTOR M. SERBY,

                                    Plaintiff,

            -against-

FIRST ALERT, INC. and BRK BRANDS, INC.,

                                    Defendants.

**09  4229**

NOTICE OF REMOVAL

------------------------------------------------------------------- x

MAUSKOPF, J.
CARTER, M.J.

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK:

Defendants First Alert, Inc. ("First Alert") and BRK Brands, Inc. ("BRK") (collectively,

the "Defendants"), pursuant to 28 U.S.C. § 1446(a), hereby file their notice of removal of the

above proceeding from the Supreme Court of the State of New York, County of Kings, Index

No. 21860/09, to the United States District Court for the Eastern District of New York,[1] on the

following grounds:

## INTRODUCTION AND RELEVANT FACTUAL BACKGROUND

1.       **The Settlement License and Mutual Release Agreement** –Defendants are in the

business of manufacturing and selling various products, including certain fire alarm devices

and/or systems. In 1995, Plaintiff Victor M. Serby ("Serby" or "Plaintiff") commenced an action

in this Court, bearing E.D.N.Y. Docket No. 95 CV 4971 (ADS), wherein Plaintiff alleged that

some of Defendants' products infringed upon Plaintiff's U.S. Patent No. 5,444,343.    In April

1997, Plaintiff and Defendants entered into a Settlement, License and Mutual Release Agreement

---

[1]    Defendants specifically preserve any and all applicable defenses pursuant to Federal Rule of Civil Procedure 12.

(the "Agreement"), whereby the parties agreed to settle the aforementioned lawsuit.

Paragraph "12" of the Agreement specifically provides that "[a]ny disputes arising between the parties relating to this Agreement shall be venued in the Eastern District of New York."

2.    **The Complaint** – On or around August 28, 2009, a Summons and Verified Complaint was filed by Plaintiff and captioned <u>Victor M. Serby v. First Alert, Inc. and BRK Brands, Inc.</u>, Index No. 21860/09, in the Supreme Court of the State of New York, County of Kings (the "Complaint"). A copy of all of the papers filed, including the Verified Complaint (with exhibits), are annexed hereto as Exhibit "A." The Complaint alleges that Defendants breached the Agreement and seeks (i) a monetary judgment against Defendants in the amount of Five Million ($5,000,000.00) Dollars, plus interest; and (ii) an accounting of Defendants' sales reports. The nature of this action is more fully stated in the Complaint. This Court has original jurisdiction of this proceeding pursuant to 28 U.S.C. § 1332.

3.    **Service Upon Defendants** – Service of process was made upon Defendants in the State of Illinois on or about September 2, 2009. Thirty (30) days have not expired since this matter became removable, making removal proper in accordance with 28 U.S.C. § 1446(b).

4.    **Joinder** – All named Defendants in this action join in this Notice of Removal.

2

## BASIS FOR REMOVAL – DIVERSITY

5.      **Removal is Proper Because Diversity Jurisdiction Exists** – There is complete diversity of citizenship between the Defendants and the Plaintiff. *See* 28 U.S.C. § 1332. As set out herein, this action involves a dispute between the Plaintiff, a citizen of New York, and the Defendants, who are citizens of States other than New York. *See* 28 U.S.C. §§ 1332, 1441(a) and (b).

6.      **Plaintiff's Citizenship** – At the time he filed his Complaint, Plaintiff was a resident of New York. *See* Complaint at ¶1. At the time of the filing of this Notice of Removal, upon information and belief, Plaintiff is still a citizen of the State of New York. *See id.*

7.      **Defendants' Citizenship** – At the time the Complaint was filed, Defendants were Delaware corporations with their principal place of business in the State of Illinois and remain so at the time of filing of this Notice of Removal.

8.      **Jurisdictional Amount** – The Complaint seeks, *inter alia,* damages of at least $5 million. The amount in controversy exceeds $75,000, exclusive of interest and costs. *See* Complaint at ¶15.

9.      Accordingly, since this matter involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, the United States District Court for the Eastern District of New York has original jurisdiction pursuant to 28 U.S.C. § 1332.

## THE NOTICE OF REMOVAL IS PROCEDURALLY CORRECT

10.     **Venue** – Pursuant to 28 U.S.C. § 1441(a), (b), and (c), this case may be removed to the United States District Court for the Eastern District of New York, where removal venue is proper.

11.     **Process and Papers** – In accordance with 28 U.S.C. § 1446, copies of all process and papers filed in the Supreme Court of the State of New York, County of Kings, including the Complaint, have been attached to this Notice of Removal as Exhibit "A."

**WHEREFORE**, Defendants request the removal of this proceeding from the Supreme Court of the State of New York, County of Kings, to this Court.

Dated: New York, New York
       September 29, 2009

Respectfully submitted,

KANE KESSLER, P.C.

By:
    Jeffrey H. Daichman (JD-8802)
    Gerard Schiano-Strain (GSS-8021)
    *Attorneys for Defendants*
    1350 Avenue of the Americas
    New York, New York 10019
    (212) 541-6222

To:
    Norman L. Cousins, Esq.
    *Attorney for Plaintiff*
    310 Greenwich Street
    New York, New York 10013
    (212) 962-6460

4

# Supreme Court of the State of New York
## County of Kings

Index No. 21860-2009

------------------------------------------------------------x

**VICTOR M. SERBY,**

**Plaintiff,**

*Plaintiff designates* Kings
*County as the place of trial*
*The basis of the venue is*
*contractual*

- against -

**FIRST ALERT, INC. and BRK BRANDS, INC.,**

**Defendants.**

# Summons

------------------------------------------------------------x

*To the above named Defendants:*

**You are hereby summoned** *to answer the complaint in this action and to serve a copy of your answer on the Plaintiff's Attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.*

**Filed with the Clerk of the Court:  August 28, 2009**

**Defendants' Address:**

**3901 Liberty Street Road**
**Aurora, Illinois 60504**
**(630) 851-7330**

**NORMAN LEONARD COUSINS**
*Attorney for Plaintiff*
**310 Greenwich Street - Suite 21H**
**New York, NY  10013-2713**
**(212) 962-6460**

SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF KINGS

-------------------------------------------------------x

VICTOR M. SERBY,

                              **Plaintiff,**

                - against -

FIRST ALERT, INC. and BRK BRANDS, INC.,

                         **Defendants.**

-------------------------------------------------------x

            **VERIFIED COMPLAINT**

            **Index No. 21860-2009**

      Plaintiff, by and through his attorney, NORMAN LEONARD COUSINS, complaining of the defendants herein, allege the following upon information and belief:

## FIRST CAUSE OF ACTION
## FOR BREACH OF CONTRACT

      **1.**     Plaintiff is a citizen and domiciliary of the State of New York, residing in the Eastern District of New York.

      **2.**     Defendant First Alert, Inc. is a Delaware corporation with its principal place of business located at 3901 Liberty Street Road, Aurora, IL 60504.

      **3.**     Defendant BRK Brands, Inc. is a Delaware corporation with its principal place of business located at 3901 Liberty Street Road, Aurora, IL 60504.

      **4.**     Plaintiff is the patentee and holder of United States Patent Number 5,444,434 issued August 22, 1995 **(Exhibit "1")**.

**5.**     On or about December 4, 1995, plaintiff commenced an action against the defendants herein in the United States District Court for the Eastern District of New York under Docket No. CV 95 4971 **(Exhibit "2")** for infringing the aforesaid patent **(Exhibit "1")**.

**6.**     Defendants answered the complaint **(Exhibit "3")**.

**7.**     The parties engaged in discovery and prepared for trial.

**8.**     Rather than proceed to trial, the parties entered into a Settlement, License and Mutual Release Agreement **(Exhibit "4")** wherein they provided in ¶ 12 thereof that:

> This Agreement shall be governed by New York law.  Any disputes arising between the parties relating to this Agreement shall be venued in the Eastern District of New York to the exclusion of any other forum.

**9.**     Kings County, New York is within the Eastern District of New York.

**10.**     The Settlement, License and Mutual Release Agreement was duly signed & executed by authorized representatives of defendants pursuant to ¶ 15 thereof on April 11, 1997 **(Exhibit "4")**.

**11.**     Defendants timely made the first payment required by the Settlement, License and Mutual Release Agreement in accordance with ¶ 1 thereof **(Exhibit "4")**.

**12.**     Defendants undertook to make the payments required by ¶ 4 of the Settlement, License and Mutual Release Agreement **(Exhibit "4")** through December 31, 2007.

13.     Beginning in 2008, defendants defaulted in making the payments required by paragraph 4 of the Settlement, License and Mutual Release Agreement **(Exhibit "4")** in breach of the settlement agreement concluding the Federal Court litigation under Docket No. CV 95 4971.

14.     Plaintiff has at all times fully performed his obligations under the Settlement, License and Mutual Release Agreement **(Exhibit "4")**.

15.     As a result of the aforesaid breach of contract by the defendants, plaintiff has been damaged in a sum in excess of $75,000 (the exact amount to be determined after a full and complete audit of defendants' books and records by plaintiff's accountants pursuant to ¶ 8 of the Settlement, License and Mutual Release Agreement **(Exhibit "4")**).

16.     Defendants have further breached the Settlement, License and Mutual Release Agreement **(Exhibit "4")** beginning in 2008 by failing to "provide [plaintiff] with reports showing the net sales, semi-annually, with respect to the Products licensed pursuant to paragraph 4 [t]hereof" as required by ¶ 8 of the Settlement, License and Mutual Release Agreement **(Exhibit "4")**.

### SECOND CAUSE OF ACTION
### FOR AN ACCOUNTING

17.     Paragraph 8 of the Settlement, License and Mutual Release Agreement **(Exhibit "4")** provides, insofar as applicable to this cause of action, as follows:

> [Plaintiff] shall have the right, annually, at his expense, through independent certified public accountants of his choosing, that are acceptable to First Alert or BRK such acceptance not to be unreasonably withheld, to examine and audit, during normal business hours, annually, all

3

records reflecting net sales of Products for preceding year, during the period from April 1 through May 31. Prompt adjustment shall be made by the proper party to compensate for any errors or omissions disclosed by such examination or audit.

18.    Plaintiff requires an accounting to ascertain the precise dollar amount of his damages occasioned by defendants' breach.

WHEREFORE, plaintiff demands judgment against the defendants and each of them on his First Cause of Action in the sum of Five Million ($5,000,000) Dollars together with interest thereon from date of breach, plus attorney's fees and the costs and disbursements of this action.    Plaintiff also demands production of all defendants' reports showing the net sales, semi-annually with respect to the Products licensed pursuant to paragraph 4 of the Settlement, License and Mutual Release Agreement **(Exhibit "4")** from January 1, 2007 forward and an accounting to establish the precise dollar amount of plaintiff's damages caused by defendants' breach.

/s/ NORMAN L. COUSINS
**NORMAN LEONARD COUSINS**
*Attorney for Plaintiff*
**310 Greenwich Street - Suite 21H**
**New York, New York 10013-2713**
**(212) 962-6460**

4

# E X H I B I T S

| DESCRIPTION | NUMBER |
|---|---|
| United States Patent Number 5,444,434 issued Aug. 22, 1995 | 1 |
| Complaint in *Serby v. First Alert, Inc.* (E.D.N.Y. Docket No. CV 95 4971) | 2 |
| Answer in *Serby v. First Alert, Inc.* (E.D.N.Y. Docket No. CV 95 4971) | 3 |
| April 11, 1997 Settlement, License and Mutual Release Agreement | 4 |

* * * * *

Exhibit 1

Case 1:09-cv-04229-WFK-VMS   Document 1   Filed 09/02/09   Page 13 of 13

# United States Patent [19]

## Serby

US005444434A

[11] Patent Number: 5,444,434

[45] Date of Patent: Aug. 22, 1995

[54] **EXTENDED LIFE SMOKE DETECTOR**

[76] Inventor: **Victor M. Serby,** 255 Hewlett Neck Rd., Woodmere, N.Y. 11232

[21] Appl. No.: **899,622**

[22] Filed: **Jun. 15, 1992**

[51] Int. Cl.⁶ ............................................. G08B 21/00
[52] U.S. Cl. ..................................... 340/628; 340/636; 320/48
[58] Field of Search ............... 340/628, 636, 629, 630; 320/48, 3; 324/425, 427, 433, 434; 429/122

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,231,026 | 10/1980 | Sullivan | 340/636 |
| 5,115,223 | 5/1992 | Moody | 340/573 |

### OTHER PUBLICATIONS

"Kodak and Dicon Systems Team Up to Promote new Long-Life Lithium Batteries and Smoke Detectors", New Release Dec. 1988.
"Extended-Life Non-Removable Battery for Smoke Detectors", 1991.

*Primary Examiner*—Jeffery A. Hofsass
*Attorney, Agent, or Firm*—Victor M. Serby

[57] **ABSTRACT**

The present invention is an improvement in battery powered smoke detectors. A smoke detector is powered by a series connection of two Li/SOCl₂ cells having a capacity of about 2 amp hours. The smoke detector draws a quiescent current of about 7 $\mu$A. A low voltage alarm activates when the battery voltage falls below about 6.0 volts upon the periodic application of about a 250 $\mu$A to about a 1 mA battery test pulse. The cells are soldered directly into the smoke detector PC board and the smoke detector is placed in an unopenable case to deter battery removal. Smoke detector life expectancy including the battery is 15 years.

**10 Claims, 3 Drawing Sheets**



Case 1:09-cv-04229-WFK-VMS   Document 1   Filed 09/30/09   Page 14 of 42 PageID #: 14



**FIG. 1**
**PRIOR ART**



FIG. 2



FIG. 3



FIG. 4

1

2

# EXTENDED LIFE SMOKE DETECTOR

This invention was made with Government support under grant number SOH (AHR-B) 1 R43 CE00014-01 awarded by the Centers for Disease Control (CDC), Center for Environmental Health and Injury Control (CEHIC), Division of Injury Control. The Government has certain rights in this invention.

## BACKGROUND OF THE INVENTION

This invention is concerned with battery powered smoke detectors, particularly a smoke detector and power source, together, having an operational life greater than 10 years.

It is a proven fact that operating smoke detectors give the early warning needed to save lives in dwelling fires. The importance of this fact is widely recognized and most jurisdictions now require landlords to provide working smoke detectors for each apartment. Also, in many states, such as New York State, a seller of a house must file an affidavit that the house has a working smoke detector before title can transfer. However, conventional smoke detectors use carbon-zinc chemistry batteries which last only one year in the application and are often removed to silence the low battery alarm and never replaced. Also, since the battery is removable (due to requirements for periodic replacement) and interchangeable in other equipment, the smoke detector battery is often "borrowed" and never replaced. Smoke detector batteries are also often removed to silence the din from false alarms caused by kitchen smoke, and left disconnected or inserted backwards to defeat the operation of visual battery removal indicators. These practices and similar scenarios often end in tragedy when a fire occurs and no smoke detector protection is afforded because the battery is either missing or disconnected.

In October 1985, Underwriters Laboratories (UL) issued the third edition of UL 217 titled "Standard for Safety Single and Multiple Station Smoke Detectors" which makes no mention of the problem of removed batteries. But UL eventually recognized the problem of removed batteries and in Jul. 17, 1987, issued revised UL 217 which took effect Feb. 28, 1989. Sections 6B.1 and 6B.2. requiring visual battery removal indicators in all battery powered smoke detectors were added. Visual battery removal indicators helped solve the problem, but only in a minor way because they are only meant as warnings and are not a foolproof means of preventing battery removal. According to the International Association of Fire Chiefs, currently 85% of American homes have at least one smoke detector, but one-third have dead or missing batteries.

Recent attempts to solve the problem of dead or missing smoke detector batteries have focused on public education. For example, the New York Times ran an editorial on Oct. 27, 1991 urging people to coordinate their smoke detector battery changes with the switch from daylight savings to standard time, and public service radio advertisements by local fire departments and insurance companies urge everyone to check his smoke detector batteries.

Omnibus Solicitation of the Public Health Service for Small Business Innovation Research (SBIR) Grant Applications (91-2) requests proposals to "design and develop an extended-life, non-removable power source for smoke detectors" as one of The Center for Environmental Health and Injury Control's (CEHIC) research topics. The CEHIC recognized the fact that a non-removable extended life power source for smoke detectors is the only way to ensure continued smoke detector protection. Unfortunately, previous attempts to make an extended life battery for a smoke detector have failed. Merely increasing the capacity of carbon-zinc or zinc-alkaline chemistry batteries does not appreciably increase battery life in a smoke detector application due to the high self discharge rate (compared with the desired operation time) of these cell chemistries. A smoke detector having a battery with an operating life of at least 10 years was CEHIC's desired goal.

## SUMMARY OF INVENTION

The primary purpose of the invention is to avoid the safety problems associated with one year batteries stated supra. A secondary purpose is to end the inconvenience of one having to frequently change smoke detector batteries.

The invention is a form, fit and function improvement of a battery powered smoke detector having a smoke detector integrated circuit, the smoke detector having a low battery alarm which sounds when the battery voltage is less than a threshold voltage, the improvement giving the smoke detector a useful life of over 15 years on the originally supplied battery.

The improvement in its basic form comprises a lithium anode primary cell or a series connection of lithium anode primary cells to power the smoke detector. The low battery alarm voltage threshold set-point and the magnitude of the battery test current pulse is adjusted to optimize battery capacity utilization. The improvement is also a new use of lithium anode primary cells to power smoke detectors.

Smoke detector battery life of 15 years or more is achievable. This allows the complete smoke detector to be housed in an unopenable case to deter battery removal. The suggested replacement date may be placed on a visible external surface at which time the whole smoke detector unit should be replaced. Of course the low battery alarm will still be active and signal when the unit must be replaced should someone forget to replace the unit at the specified date.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a functional block diagram/schematic of a smoke detector.

FIG. 2 is a functional block diagram/schematic of an improved smoke detector using lithium/thionyl chloride cells as the power source.

FIG. 3 is a layout diagram of a circuit board of the improved smoke detector.

FIG. 4 is a view of the improved smoke detector in a case.

## DESCRIPTION OF PREFERRED EMBODIMENT

To avoid confusion, the term "battery" when used herein refers to a connection of two or more electrochemical cells or a single electrochemical cell.

FIG. 1 shows is a typical functional block diagram/-schematic of a battery powered smoke detector. In a typical prior art smoke detector, the smoke detector integrated circuit (IC) (1), such as the Allegro 5348 or similar IC is powered from a battery (2) which is a 9 volt carbon zinc or zinc alkaline chemistry battery. The smoke detector contains a means for applying a periodic pulse current to battery (2) through pin 5. Resistor (3) and LED (4) determine the magnitude of the battery

5,444,434

test pulse current which is periodically applied to battery (2). This battery test pulse current is about 10 mA for the Eveready 216 and similar 9 volt batteries. The smoke detector also contains a means for triggering an alarm when the battery voltage falls below a threshold voltage. The threshold voltage at which the low battery alarm is activated is determined by zener diode (5) and voltage divider (6) (both internal to IC (1)), and resistor (7) from pin 3 to either $V_{DD}$ or $V_{SS}$ to externally adjust the low battery alarm threshold voltage. Without any external adjustment, prior art smoke detector IC's low battery alarm threshold voltages are set at about 7.5 volts. Most prior art smoke detector IC's allow adjustment no lower than about 7.0 volts, and a few allow reliable adjustment down to about 6.4 volts. The smoke detector further contains means for triggering an alarm in response to concentration of smoke above a threshold value.

In accordance with a first preferred embodiment of the invention, FIG. 2 is a typical functional block/-schematic diagram of a smoke detector which will have a useful life of about 15 years. Circuit topology is similar to prior art smoke detectors, however the type of battery powering the smoke detector, the magnitude of the periodic battery test pulse current and the magnitude of the low battery alarm threshold voltage is different and the components affecting these magnitudes are different in value. A smoke detector integrated circuit (IC) (1) such as the Allegro 5348 or similar IC is powered from a battery comprised from a series connection of two AA size Li/SOCl₂ primary cells (2), having a rated capacity of about 2 AH and a nominal voltage of about 3.65 volts per cell. Tadiran part number TL-5903 (2.4 AH) and Saft part number LS-6 (1.8 AH) are representative of the types of lithium anode primary cells which work well in this application. Smoke detectors based on this or a similar CMOS IC can be designed to have a quiescent current of about 7 μA or less when powered from voltage sources of about 9 volts or less. Superimposed on top of this 7 μA quiescent current is a periodic battery test pulse current having a preferred pulsewidth of about 10 ms and a preferred amplitude of about 250 μA to 1 mA. The amplitude of this test pulse current is controlled by resistor (3) and LED (4). Resistor (3) has a value of about 6 Kohms to give about a 1 mA battery test pulse current. This battery test pulse current has a repetition period of about 40 seconds. The battery test pulse current may be further reduced or eliminated altogether if a visual periodic LED indication of unit operation is not required. The low voltage alarm threshold is preferably set at about 5.6 to 6.4 volts (2.8 to 3.2 volts per Li/SOCl₂ cell in series) which gives the battery a useful life of at least 15 years in this application. In a smoke detector based on the Allegro 5348, a 6.4 volt low battery alarm threshold voltage was achieved by using a 9.1 Kohm resistor (7) between pin 3 and $V_{DD}$. This is the lowest value of low battery voltage alarm threshold that can be reliably set in this IC. Using a battery (2) comprising a series connection of two larger capacity cells such as C size (about 5.2 AH) will permit continuous operation for longer than 25 years.

It should be noted that the lowest value of low voltage threshold that can be set in a currently commercially available smoke detector IC is about 6.3 volts. Most prior art smoke detector ICs will not allow adjustment of the low voltage threshold below about 7.0 volts. Most have low voltage threshold set points of about 7.5 volts in the absence of external trim resistors.

It is therefore preferred when using a series connection of two Li/SOCl₂ cells to power the smoke detector to use a custom made smoke detector IC having a low voltage threshold set point of about 6.0 volts in the absence of external resistors, with full adjustment capability in at least the range of about 5.6 to about 6.6 volts. Those skilled in the art of integrated circuit design can easily provide such an IC.

The low battery test pulse current must be minimized so that the LiCl passivation layer in the Li/SOCl₂ cell is not destroyed. Otherwise, the self discharge rate of the cells becomes excessive and battery longevity is reduced. Furthermore, large low battery test pulse currents directly consume significant battery life. In a typical AA cell having about 14 square centimeters of anode area, the low battery test pulse current should be under about 5 mA and preferably under about 1 mA to prevent excessive self discharge. In cells having the same chemistry, the magnitude of the low battery test pulse current should be proportional to the anode area of the cell to maintain the same anode current density. Larger capacity cells having larger anode areas such as a C size will require proportionally more test pulse current with respect to anode area to have the same voltage drop characteristics.

Another reason for having low magnitude battery test pulse currents is that the passivation layer acts as a resistor in series with the cell, thereby dropping voltage when the pulse occurs. This voltage drop for a 1 mA 10 ms pulse with a pulse repetition frequency of about 40 seconds on a background current of about 7 μA will build to a steady state value of about 0.14 volts in a typical AA size Li/SOCl₂ cell having 10 to 14 square cm of anode area. Ideally, selection of the battery test pulse current and the low battery threshold voltage must be made so that the low battery alarm is sounded when about 1 to 2 months worth of energy or as close thereto as practical (erring on the high side) is remaining in the battery. The remaining energy includes at least 7 days of low battery alarm operation as required by specification UL 217. Because, Li/SOCl₂ chemistry cells at the discharge rates of interest have a steep drop in end life voltage as a function of remaining capacity, to meet this criterion it is preferred to set the low battery alarm threshold voltage at about 3.0 volts per cell in series and have the battery test pulse current set at about 1 mA. This will trigger the low battery alarm when the battery voltage under quiescent current draw is about 3.1 volts per cell in series. However, substitution of other combinations of low battery alarm threshold voltage and battery test pulse current magnitude will perform essentially the same function in essentially the same way to achieve essentially the same result as the preferred combination. Particularly, many combinations of battery test pulse currents from zero to about 5 mA and low battery alarm threshold voltages in the range of about 2.8 to about 3.5 volts per cell in series will perform adequately for typical AA size bobbin cells although many of these combinations fall outside of the most preferred range.

Micro-calorimetric measurements of lithium anode chemistry cells permit relatively quick quantification of the self-discharge rate of the cells under various load conditions. This enables accurate prediction of the longevity of a particular battery in smoke detector applications. In addition, the maximum magnitude of the battery test pulse current to prevent excessive self discharge can be determined by this method.

5,444,434

**5**

One is cautioned against merely substituting a lithium anode primary battery into the smoke detector of FIG. 1 which is designed to operate on 9 volt carbon/zinc or $Zn/MnO_2$ chemistry batteries as one may be tempted to do. Such action will result in a poorly operative smoke detector which will not achieve a significant increase in battery life. The long battery life in the smoke detector will not be achieved unless the aforementioned smoke detector electrical characteristics are matched to the lithium anode battery.

Referring to FIG. 3, it is preferred to permanently solder the $Li/SOCl_2$ battery (2) into the smoke detector printed circuit (PC) board (8) for ease of assembly and to deter removal of the battery. IC (1) is soldered to PC board (8) under smoke detecting means comprising smoke chamber (13), and most of the rest of the electronic components are soldered into PC board (8) under piezoelectric horn (14) as is customary in the art. LED (4) is positioned, as customary in the art, with an unblocked view so that it may be observed during smoke detector operation. Unlike prior art smoke detectors in which the batteries are intended to be consumer removable and replaceable, the factory installation of a lithium anode primary battery is intended to be permanent for the life of the smoke detector. Referring to FIG. 4, it is also preferred to place the assembled smoke detector circuitry inside an unopenable case (9), which prevents physical access, to further deter battery removal or tampering. An injection molded plastic two piece snap-together case, which will not come apart once snapped together is envisioned for this application. The case has small openings (10) communicating between the inside and outside to allow the entrance of smoke and the unmuffled exit of sound from an audible alarm internal to the case. It is preferred to place a suggested replacement (11) date on a visible external surface of the case (9). Test button (12) is of prior art design and communicates light from LED (4) to the outside of case (9). Pressing button (12) activates the alarm. "Set and forget" operation is anticipated for at least 15 years at which point the complete unit would be discarded and replaced with another at the suggested replacement date or when the low battery alarm activates. Since the smoke detector is a form, fit and function replacement for prior art battery powered smoke detectors, smoke detector placement and all operational parameters other than those affecting battery replacement would be the same as currently recommended in the literature for battery powered smoke detectors. The brief pressing of test button (12) however, is preferred to be on a bi-monthly basis rather than on a weekly basis as recommended for prior art smoke detectors. Should smoke be detected, the LiCl passivation layer automatically breaks down upon higher current draw and the horn will be driven at an acceptable volume of at least 85 db. All the applicable performance requirements of UL specification 217 can be met by using the invention.

Although a fairly wide operating temperature range is possible, it is preferred to use this invention at the normal fluctuations of residential room ambient temperature (about 17 to 30 degrees Celsius). In this temperature range, it is preferable to set the battery test pulse current at about 500 μA to 1 mA for AA size $Li/SOCl_2$ cells. If the temperature range is increased to include lower temperature operation down to about 10 degrees Celsius, it is preferable to set the battery test pulse current at about 250 μA to 500 μA. It is advisable not to exceed about 37 degrees Celsius for extended periods

**6**

because battery life will be significantly reduced and 15 year operation will not be achieved. Very low temperature operation may trigger the low battery alarm even though significant energy remains in the battery. In this case though, the battery will automatically recover when the temperature is again increased.

Other embodiments exist where different lithium anode chemistry cells such as $Li/(CF)_n$ power the smoke detector. However, these other lithium anode chemistries either do not have as good a volumetric energy density as $Li/SOCl_2$ nor as high an operating voltage, and are therefore considered secondary preferred embodiments to $Li/SOCl_2$ cells. For example, a series connection of three $Li/(CF)_n$ A size cells are needed with a low voltage alarm threshold of about 7.5 volts (2.5 volts per cell in series) and a battery test pulse current of about 250 μA to 1 mA to meet a 15 year life.

Increasing the useful life of a smoke detector battery presents another problem which must be considered. The longevity of the battery may exceed the useful life of the smoke detector electronics. UL 217 lists in section S3.1, the maximum allowable failure rates of smoke detectors based on MIL-HDBK-217B methods of calculation and other reliability prediction methods. The current maximum allowable failure rate ranges from 3.5 to 4.0 failures per million hours depending on the reliability prediction method employed. Based on the "parts stress analysis" method of MIL-HDBK-217F using the ground benign environment at a 25 degree Celsius ambient temperature for a 15 year smoke detector battery, it is preferred to have a maximum smoke detector electronics failure rate of 0.38 per million hours, and for a 25 year smoke detector battery it is preferred to have a maximum failure rate of 0.23 per million hours. The smoke detector IC must also be checked to make sure that the calculated point where 5% of the part population could be expected to experience wear-out ($t_{5\%}$) for electromigration and time dependent dielectric breakdown, as applicable, is not within the expected smoke detector lifetime.

Although a specific preferred embodiment of the present invention has been described in detail above, it is readily apparent that those skilled in the art and science may make various modifications and changes to the present invention without departing from the spirit and scope thereof. These changes include but are not limited to substitution of equivalents, addition of elements, or incorporation of the invention as a feature of other equipment. It is to be expressly understood that this invention is limited by the following claims:

What is claimed is:

1. A smoke detector of the type powered by a battery, said smoke detector having means for triggering an alarm in response to a concentration of smoke above a threshold value, said smoke detector having means for triggering an alarm when the battery voltage falls below a threshold voltage, said battery having a service life within said smoke detector of at least one year, wherein the improvement comprises:

a) a lithium anode primary battery powering said smoke detector; and

b) means for providing a periodic pulse current to said battery, the magnitude of said pulse current falling within the range of zero to about 11 mA.

2. The smoke detector of claim 1 wherein said lithium anode primary battery comprises a lithium/thionyl chloride cell or a series connection of lithium thionyl chloride cells powering said smoke detector.

5,444,434

7

3. The smoke detector of claim 2 wherein said threshold voltage is about 2.8 to about 3.5 volts per cell in series.

4. The smoke detector of claim 3, wherein the magnitude of said pulse current is in the range of zero to about three milliamps per 14 square centimeters of each cell's anode area.

5. The smoke detector of claim 1 further comprising a case, said case having an inside and an outside, said case having openings therein communicating between said inside and said outside to allow the entry of smoke from said outside to said inside, said electronic circuit and said battery contained within said case, said battery having a service life within said smoke detector of at least ten years, said case unopenable to deter physical access to said battery.

6. A smoke detector comprising:

(a) an electronic circuit, said electronic circuit having means for triggering an alarm in response to a concentration of smoke above a threshold value, said electronic circuit having means for triggering an alarm in response to its supply voltage falling below a threshold voltage, said threshold voltage having a range of about 7.0 volts to about 5.6 volts; and

8

(b) a battery, said battery providing said supply voltage to said electronic circuit, said battery comprising a series connection of two Li/SOCl$_2$ primary cells, said battery having a capacity of about 2 amp hours; and

(c) means for providing a periodic pulse current to said battery, the magnitude of said pulse current falling within the range of zero to about 5 mA.

7. The smoke detector of claim 6 wherein the magnitude of said pulse current falls within the range of about 250 $\mu$A to about 3 mA.

8. The smoke detector of claim 7 wherein the magnitude of said pulse current falls within the range of about 250 $\mu$A to about 1 mA.

9. The smoke detector of claim 8 wherein said threshold voltage is about 6.2 volts.

10. The smoke detector of claim 6 further comprising a case and smoke detection means, said case having an inside and an outside, said case having openings therein communicating between said inside and said outside to allow the entry of smoke from said outside to said inside, said electronic circuit and said battery and said smoke detection means contained within said case, said battery having a service life within said smoke detector of at least ten years, said case unopenable to deter physical access to said battery.

* * * * *

O 440 (Rev 1/90) Summons in a Civil Action

# United States District Court

### EASTERN   DISTRICT   DISTRICT OF   NEW YORK

Victor M. Serby,

      Plaintiff,

            v.

First Alert, Inc.,
and
BRK Brands, Inc.,

      Defendants.

## SUMMONS IN A CIVIL ACTION

CASE NUMBER:

V 95 4971



TO: (Name and Address of Defendant)

First Alert, Inc.          BRK Brands, Inc.
780 McClure Road           780 McClure Road
Aurora   IL                Aurora   IL

SPATT,

ORENSTEIN, M.

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY (name and address)

Sprung Horn Kramer & Woods
120 White Plains Road
Tarrytown  NY  10591

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

ROBERT C. HEINEMANN

DEC 04 1995

_____
CLERK

_____
DATE

_____
BY DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

CV 95 4971

------------------------------------
VICTOR M. SERBY,                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        COMPLAINT
                                    )
FIRST ALERT, INC., and              )
BRK BRANDS, INC.,                   )
                                    )
                Defendants.         )
                                    )
------------------------------------x


        Plaintiff alleges:


        1.    This is an action for patent infringement
arising under the patent laws of the United States, 35 USC
§ § 271 and 281.  Jurisdiction is conferred on this Court by
28 USC § 1331 and 1338.  Venue is appropriate under 28 USC §
1400 and 28 USC § 1391.



        2.    Plaintiff, Victor M. Serby, is an individual
residing at 255 Hewlitt Neck Road, Woodmere, New York,
11598.



        3.    Defendant, First Alert, Inc., is a Delaware
Corporation, having its principal place of business at 780
McClure Road, Aurora, Illinois, 60504-2495.

4.    Defendant, BRK Brands, Inc., is, upon information and belief, a Delaware Corporation, having its principal place of business at 780 McClure Road, Aurora, Illinois, 60504.

5.    U.S. Patent 5,444,434 is owned by plaintiff who is the patentee.

6.    Defendants have infringed and induced the infringement of said U.S. patent and will continue to do so, to the irreparable injury of plaintiff, unless enjoined by this Court.

7.    Upon information and belief, such infringement has been willful and deliberate.

8.    Plaintiff respectfully demands a jury trial.

2

WHEREFORE, plaintiff prays for a preliminary and final injunction against continued infringement by defendants, their agents, servants and employees, and all those acting in concert with them; an accounting for damages; an assessment of treble damages in view of the willful and deliberate character of the infringement; an assessment of interest and costs against the defendants, attorneys' fees and such other and further relief as the Court may deem just and proper.

VICTOR M. SERBY

By: _____
Arnold Sprung, Esq. (AS-5238)
Ira J. Schaefer, Esq. (IJS-6172)
SPRUNG HORN KRAMER & WOODS
120 White Plains Road
Tarrytown, New York  10591
(914) 332-5056

Attorneys for Plaintiff

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
VICTOR M. SERBY,                              Civil Action No.
                                             CV 954971 ADS
                           Plaintiff,

        -against-
                                             **ANSWER, AFFIRMATIVE
                                             DEFENSES AND COUNTER-
FIRST ALERT, INC. and                        CLAIM OF DEFENDANTS,
BRK BRANDS, INC.,                            FIRST ALERT, INC.,
                                             AND BRK BRANDS, INC.**
                           Defendants.
------------------------------------X

        Defendants  First  Alert,  Inc.  and  BRK  Brands,  Inc.,
(collectively "defendants"), by their attorneys as and for their
answer to the complaint allege as follows:

        1.    Admit that Serby purports to state claims under the
patent laws in his complaint.  However, defendants deny knowledge
or information sufficient to form a belief as to the truth of the
remaining allegations contained in paragraph "1" of the complaint.

        2.    Deny knowledge or information sufficient to form a
belief as to the truth of the allegations contained in paragraph
"2" of the complaint.

        3.    Deny  each  and  every  allegation  contained  in
paragraph "3" of the complaint except admit that First Alert, Inc.
is a Delaware corporation.

        4.    Deny  each  and  every  allegation  contained  in
paragraph "4" of the complaint except admit that BRK Brands, Inc.
is a Delaware Corporation.

5.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "5" of the complaint.

6.    Deny each and every allegation contained in paragraph "6" of the complaint.

7.    Deny each and every allegation contained in paragraph "7" of the complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

8.    Defendants have not and do not infringe any valid claim of U.S. Patent No. 5,444,434 allegedly "owned" by plaintiff (the "Patent"), including literal infringement, infringement under the doctrine of equivalents, or infringement under the doctrine of equivalents as limited by the application of the doctrine of prosecution history estoppel.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

9.    Upon information and belief, the Patent is invalid and unenforceable for failure to satisfy the conditions of patentability and for failure to comply with the requirements of Title 35 of the United States Code.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

10.    The Patent is unenforceable due to the inequitable conduct of plaintiff.

2

L:\52716.RJC

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

11.   Plaintiff is not entitled to enhanced damages because any purported infringement was neither willful, deliberate, nor intentional.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

12.   Plaintiff's conduct renders this an exceptional case entitling defendants to an award of attorneys' fees.

## AS AND FOR A COUNTERCLAIM AGAINST PLAINTIFF

13.   Defendants, as and for a counterclaim against plaintiff, allege as follows:

### Nature of Action

14.   This Counterclaim is for a declaration of patent non-infringement and invalidity arising under the Declaratory Judgment Act, 28 U.S.C. §2201, et seq. and the patent laws of the United States, 35 U.S.C. §1, et seq.

### The Parties

15.   Counterclaim-Plaintiff, First Alert, Inc., is a Delaware corporation with its principal place of business in Aurora, Illinois.

16.   Upon information and belief, Counterclaim-Defendant, Victor M. Serby, is an individual residing at 255 Hewlitt Neck Road, Woodmere, New York 11598.

### Jurisdiction and Venue

17.   This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§1338, 2201 and 2202.

3

L:\52716.RJC

18. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

**Acts Giving Rise To The Counterclaim**

19. Plaintiff/Counterclaim-Defendant Victor M. Serby, ("Serby"), filed suit against defendants for alleged infringement of U.S. Patent No. 5,444,434, which Serby asserts that he owns.

20. Serby's assertion that he owns the Patent and that defendants allegedly infringed and/or are infringing the Patent creates an actual and justiciable controversy between defendants and Serby regarding the validity and infringement of the Patent.

<b>COUNT I (Invalidity)</b>

21. Defendants repeat, reallege and reiterate each and every allegation contained in paragraphs "13" through "20", inclusive herein, as if set forth here at length.

22. The Patent is invalid and unenforceable for failure to comply with the requirements of Title 35 of the United States Code.

<b>COUNT II (Noninfringement)</b>

23. Defendants repeat, reallege and reiterate each and every allegation contained in paragraphs "13" through "20", inclusive herein, as if set forth here at length.

24. Defendants have not infringed and do not infringe any valid claim of the Patent, either literally, under the doctrine of equivalents, or under the reverse doctrine of equivalents.

4

WHEREFORE, defendants demand judgment against plaintiff as follows:

a.   that plaintiff's complaint be dismissed with prejudice;

b.   that judgment be rendered in favor of defendants;

c.   that the Court deem this case to be "exceptional" within the meaning of 35 U.S.C. §285 entitling defendants to an award of their reasonable attorneys' fees and expenses in defense of the complaint; and

ON DEFENDANTS' COUNTERCLAIM:

d.   that this Court declare the Patent, and each and every claim thereof, to be wholly invalid and unenforceable;

e.   that the Court declare that defendants and their products, if any, do not infringe any claim of the Patent;

f.   that the Court deem this case to be "exceptional" within the meaning of 35 U.S.C. §285 entitling defendants to an award of their reasonable attorneys' fees and expenses in connection with the counterclaim; and

5

                    g.    that the Court grant such other and further

relief as the Court may deem just and proper.

Dated:  Mineola, New York
        March 22, 1996


                              MELTZER, LIPPE, GOLDSTEIN,
                                WOLF & SCHLISSEL, P.C.

                              By: _____
                                  JOSEPH B. RYAN (JR 2029)

                              Attorneys for Defendants First Alert,
                              Inc. and BRK Brands, Inc.
                              190 Willis Avenue
                              Mineola, New York 11501
                              (516) 747-0300


Of Counsel:
Paul M. Vargo, Esq.
Annette M. McGarry, Esq.
DRESSLER, GOLDSMITH, SHORE
  & MILNAMOW, LTD.
180 North Stetson Avenue
Two Prudential Plaza
Suite 4700
Chicago, Illinois 60601
(312) 616-5400


                                 6

## SETTLEMENT, LICENSE AND MUTUAL RELEASE AGREEMENT

This Settlement, License and Mutual Release Agreement ("Agreement") is made by and between First Alert Inc. ("First Alert"), BRK Brands, Inc. ("BRK") and Victor M. Serby ("Serby").

WHEREAS, Victor M. Serby has filed an action styled <u>Victor M. Serby v. First Alert, Inc. and BRK Brands, Inc.</u>, Civil Action No. 95 C 4971 (ADS) (hereinafter referred to as "the Action"), which is pending in the United States District Court for the Eastern District of New York;

WHEREAS, in the Action, Victor M. Serby alleged that some of First Alert's and BRK's products being sold infringed his U.S. Patent No. 5,444,434 (hereinafter referred to as "the Serby Patent");

WHEREAS, First Alert and BRK denied these allegations and filed certain counterclaims seeking a declaration of invalidity of the Serby Patent;

WHEREAS, in view of the potential cost of proceeding to a final adjudication of the Action and to avoid litigation between the parties, the parties are desirous of an amicable resolution of the Action;

Now, therefore, First Alert, BRK and Serby do hereby agree as follows:

1.      BRK agrees to pay to Serby the sum of $150,000.00 within thirty (30) days of his execution and delivery of this Agreement and First Alert agrees to cause BRK to do so.  These moneys shall be paid to Sprung, Horn, Kramer & Woods to be held in escrow for Victor M. Serby.

2.      Serby agrees that BRK is entitled to export, offer for sale and sell, its current inventory of SA10YR smoke detectors up to and including 50,000 units without payment of any royalty to Serby.  The accounting for the 50,000 units will begin on March 1, 1997.

3.      Serby grants to First Alert and BRK a non-exclusive license under the Serby Patent to make, have made, use, import, export, offer for sale and sell smoke detectors.

4.      First Alert or BRK agree to pay Serby a 5% royalty, semi-annually, based on the net sales of smoke detectors which incorporate a lithium battery, meet all other limitations of Claims 5 and 10 of the Serby Patent and which have a battery compartment that is unopenable as is defined in Claims 5 or 10 of the Serby Patent and which are made, used or sold by First Alert and/or BRK in the United States for the time period during which Claims 5 or 10 of the Serby Patent remain valid and enforceable. Payment shall be made semi-annually, if any are due, by March 15th of each year for the preceding June through December and by September 15th of each year for the preceding January through June.

For purposes of this Agreement the net sales is the sales revenue of BRK from the sale of product, previously defined herein ("Products"), less costs, which are: Co-op and MCF Funds, freight out, cash discounts, returns and insurance.

"Co-op Funds" are funds provided by First Alert or BRK to all accounts regardless of size for their use in the accounts' (customer) advertising of Products. Typically this is equal to 5% of the distributor price of the product.  These funds are controlled by each individual account.  Some accounts may choose to net these funds off of their invoiced price.

"MCF Funds" are funds provided for slotting allowances, end-cap allowances, new product fees, new store opening fees, etc.  Some accounts may

choose to net these funds off of the invoiced price.  These funds also are under the control of the accounts and are offered to all accounts regardless of size.

There shall be no royalty obligation for promotional or marketing distribution of Products.  Promotional or marketing Products are those Products for which First Alert and/or  BRK does not record any net sales when distributed to a third party.

There shall be no royalty obligation for the sale of the 50,000 units described in paragraph 2 hereof.

First Alert and BRK can make, have made, use, offer for sale, sell, import and export royalty free (i) lithium batteries for use in smoke detectors, and (ii) smoke detectors which have battery compartments that are openable and can be used with lithium batteries.

5.      First Alert and BRK agree that Serby has no duty to institute an action for patent infringement of the Serby Patent against third parties.

6.      Serby agrees that in the event that he licenses the Serby Patent to a third party on different terms than those provided herein, he has a duty to offer those same terms to First Alert and BRK.  If First Alert and/or BRK chose to accept those terms, they shall have the benefit of those terms as of  the effective date of the license agreement between Serby and the third party.  Serby does not have an obligation to refund to First Alert and/or BRK any sums previously paid pursuant to this Agreement.

7.      This Agreement and the licenses and rights granted hereunder, shall be assignable or otherwise transferable by First Alert or BRK as part of the of sale of all or substantially all of the assets of either First Alert or BRK without the consent of Serby.

8.      First Alert or BRK agree to provide Serby with reports showing the net sales, semi-annually, with respect to the Products licensed pursuant to paragraph 4

3

hereof. Serby shall have the right, annually, at his expense, through independent certified public accountants of his choosing, that are acceptable to First Alert or BRK such acceptance not to be unreasonably withheld, to examine and audit, during normal business hours, annually, all records reflecting net sales of Products for preceding year, during the period from April 1 through May 31. Prompt adjustment shall be made by the proper party to compensate for any errors or omissions disclosed by such examination or audit.

9.      First Alert and BRK agree that if either commit any breach of any covenant contained herein, and if within sixty (60) days of written notice thereof by Serby, First Alert or BRK fail to cure the breach, Serby may at his option, terminate any and all licenses and rights granted herein to First Alert and BRK.

10.      First Alert and BRK, their officers, employees, agents, servants, successors and assigns do hereby release and forever discharge Serby, his agents, successors and assigns from any and all claims or actions which First Alert and BRK now have, may have or may claim to have whether arising by tort, contract or statute, whether the same be known or unknown or hereafter discovered, as of the date of this Agreement, including, without limiting the generality of the foregoing, all counterclaims which were raised or could have been raised in the Action brought by Serby against First Alert and BRK except for any claims or actions arising from a breach of this Agreement.

11.      Serby, his agents, servants, successors and assigns, heirs, personal representatives, beneficiaries, or any other person or entity now or hereafter having control or ownership interests in the Serby Patent do hereby release and forever discharge First Alert and BRK, their officers, employees, agents, distributors, customers, end users, successors and assigns from any and all claims or actions which Serby now has, may have or may claim to have whether arising by tort, contract or statute, whether

4

the same be known or unknown or hereafter discovered, as of the date of this Agreement, including, without limiting the generality of the foregoing, all claims which were raised or could have been raised in the complaint brought by Serby against First Alert and BRK in the Action except for any claims or actions arising from a breach of this Agreement.

12.     This Agreement shall be governed by New York law.  Any disputes arising between the parties relating to this Agreement shall be venued in the Eastern District of New York to the exclusion of any other forum.

13.     First Alert, BRK and Serby agree hereby that the consideration stated herein is the sole consideration for this Agreement and that such consideration is contractual and not a mere recital.

14.     First Alert and BRK on one hand and Serby on the other hand warrant and represent that they have been represented by counsel during the Action and the negotiations resulting in this Agreement and that they have entered into this Agreement knowingly and voluntarily and without duress.

15.     First Alert and BRK on one hand and Serby on the other hand represent and warrant that the Agreement as set forth herein has been duly authorized by the respective parties, and that each person executing this Agreement is authorized to do so on behalf of their respective party.

16.     In the event that any portion of this Agreement is held to be invalid or unenforceable, it shall not affect the validity or enforceability of any other provision of this Agreement.

17.     A waiver of any breach of any provision of this Agreement shall not be construed as a continuing waiver of breaches of the same or other provisions of this Agreement.

18.     This Agreement embodies the entire understanding between the parties and there are no prior representations, warranties, or agreements between the parties relating hereto, and this Agreement is executed and delivered upon the basis of this understanding.  No waiver of or change in any of the terms hereof subsequent to the execution hereof claimed to have been made by any representative of either party shall have any force or effect unless in writing and signed by the parties or their duly authorized representatives.

19.     The parties agree to execute, acknowledge and deliver all such further instruments, to do all such acts, as may be necessary or appropriate in order to carry out the intent and purposes of this Agreement.

20.     The parties agree to execute, concurrently with this Agreement, the attached Exhibit A.  Exhibit A is a stipulation dismissing all claims, with prejudice, that the parties have alleged against one another in the Action.

21.     None of the parties shall disclose the terms or existence of this Agreement without the prior written approval of the other parties.

22.     Notices required under this Agreement shall be in writing and shall for all purposes be deemed to be fully given and received if sent by certified mail, return receipt requested, postage prepaid, to the respective parties at the following addresses:

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------X
                       )

VICTOR M. SERBY,          )
                       )

         Plaintiff,      )
                       )

         v.           )      Civil Action No.
                       )      CV 95-4971  (ADS)

FIRST ALERT, INC. and    )
BRK BRANDS, INC.        )
                       )

         Defendants.    )
                       )
------------------------------------------------X

## STIPULATION

      Pursuant to Rule 41 (a) (1) of the Federal Rules of Civil Procedure, Plaintiff,

Victor M. Serby and Defendants, First Alert Inc. and BRK Brands, Inc., dismiss all

alleged claims that the parties have against one another.  This dismissal is with

prejudice.

_____
**VICTOR M. SERBY**

_____
**FIRST ALERT, INC.**

_____
**BRK BRANDS, INC.**

BRK Brands, Inc.
3901 Liberty Street Road
Aurora, Illinois 60504

First Alert, Inc.
3901 Liberty Street Road
Aurora, Illinois 60504

Victor M. Serby
c/o Ira J. Schaefer
Sprung, Horn, Kramer & Woods
120 White Plains Road
Tarrytown, New York 10591

Any party hereto may change its address for the purposes of this Agreement by giving the other parties written notice of its new address.


**FIRST ALERT, INC.**

By: _____     Dated: _____4-11-97_____


**BRK BRANDS, INC.**

By: _____     Dated: _____4-11-97_____


**VICTOR M. SERBY**

By: _____     Dated: _____01 APR 97_____

## <u>ATTORNEY'S VERIFICATION</u>

NORMAN LEONARD COUSINS, an Attorney and Counsellor at Law admitted to practice in all the Courts of the State of New York and the Attorney of Record for the plaintiff herein, affirms the following statement to be true under the penalties of perjury pursuant to CPLR 2106:

Your affirmant has read the foregoing Complaint and knows the contents thereof. The matters set forth therein are true to your affirmant's knowledge except as to those matters set forth upon information and belief and as to those matters your affirmant believes them to be true.

This verification is made by your affirmant because plaintiff is not in the county wherein your affirmant maintains his office.

The grounds of your affirmant's belief as to all matters not stated upon personal knowledge are the contents of your affirmant's file and his investigation into the facts of the case.

**Affirmed to be true this 28th day of August, 2009.**

**/s/ NORMAN L. COUSINS**
**NORMAN LEONARD COUSINS**