UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VICTOR M. SERBY,

        Plaintiff,

  - against -

FIRST ALERT, INC., and BRK BRANDS, INC.,

        Defendants.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
09-CV-4229 (RRM)(ALC)

**ROSLYNN R. MAUSKOPF, United States District Judge.**

      Plaintiff Victor M. Serby, an attorney proceeding *pro se*, brought this action against defendants First Alert, Inc. ("First Alert") and its subsidiary BRK Brands, Inc. ("BRK"). Plaintiff alleges that defendants deal in various smoke detectors without payment of royalties to plaintiff, in breach of a pre-existing agreement reached in settlement of a 1995 patent infringement litigation. (Notice of Removal (Doc. No. 1) at 7–10 ("Compl.") ¶¶ 10–16.) Presently before the Court is defendants' joint motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Defs.' Mot. for Summ. J. (Doc. No. 22) at 1.) Defendants claim that the manufacture and sale of two product lines at issue does not violate the settlement agreement as a matter of law.[1] (*Id.*) For the reasons set forth below, defendants' motion is GRANTED in part and DENIED in part.

---

[1] Plaintiff alleges that defendants continue to sell the SA10YR model smoke detector that gave rise to the 1995 litigation and settlement, and owe royalties for those sales dating to 2008. (*See* Compl. ¶ 13.) The instant motion, however, is limited to the question whether defendants' more recent "E-Z Access" and SA340 models are "unopenable" under the Settlement Agreement. (*See* Conf. Tr. at 21–22; Pl.'s 56.1 Stmt. ¶ 16; Order, Aug. 17, 2010 (Doc. No. 20).)

## BACKGROUND[2]

The following facts are either undisputed or described in the light most favorable to the plaintiff. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2001). Plaintiff is a professional engineer and the owner of U.S. Patent No. 5,444,434 (" 434 Patent"), entitled "Extended Life Smoke Detector." (Serby Decl. (Doc. No. 22-9) ¶ 3; Pl.'s 56.1 Cntrstmt. (Doc. No. 22-15) ¶ 2; U.S. Patent No. 5,444,434 (filed June 15, 1992).) As described more fully below, the 434 Patent involved smoke detectors with unopenable housing that contained 10-year lithium batteries. 434 Patent col.2 l.25–40. Defendant First Alert is the parent company of defendant BRK. (Defs.' 56.1 Stmt. (Doc. No. 22-6) ¶ 2.) BRK is a manufacturer and distributor of home safety and security products, including smoke detectors. (Defs.' Mot. for Summ. J. at 8 (Devine Decl.), at ¶ 2.) BRK sells smoke detectors under the "First Alert" brand name. (*Id.*)

### I. Previous litigation and settlement

In 1995, plaintiff brought an action in the Eastern District of New York alleging, *inter alia*, that BRK's SA10YR model smoke detector infringed the 434 Patent. (Pl.'s 56.1 Cntrstmt. ¶ 3.) The SA10YR model smoke detector had a cover attached to a base that could not be

---

[2] Unless otherwise noted, citations to the parties' Rule 56.1 statements concern factual assertions that are admitted or are deemed admitted because they were not contradicted by citations to admissible evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). Plaintiff has conceded 30 of the 40 paragraphs in defendants' Rule 56.1 statement, contesting only their materiality. Plaintiff asks the Court to disregard the declaration of Mark Devine, Vice President of Marketing for BRK, submitted with defendants' motion for summary judgment, because Devine was not disclosed as an expert under Federal Rule of Civil Procedure 26(a)(2). Devine's testimony, however, is based on his perceptions and personal knowledge of defendants' products, not on "scientific, technical, or other specialized knowledge within the scope of Rule 702," and thus is not expert testimony within Federal Rule of Civil Procedure 26(a)(2). Fed. R. Evid. 701 advisory committee's note (2000 amends.); *see Bank of China v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004); *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 111 (2d Cir. 2002); *Lamere v. N.Y. State Office for the Aging*, No. 03-CV-0356, 2004 WL 1592669, at *1 (N.D.N.Y. July 14, 2004).

removed and a battery compartment containing a ten-year lithium battery.[3] (*Id.* ¶¶ 9–11.) In April 1997, plaintiff and defendants entered into a Settlement, License and Mutual Release Agreement ("Settlement Agreement"), requiring defendants to pay plaintiff a 5% royalty based upon the net sales of the SA10YR model and other smoke detectors that "incorporate a lithium battery, meet all other limitations of Claims 5 or 10 of the ['434] Patent[, and] have a battery compartment that is unopenable as is defined in Claims 5 or 10 of the ['434] Patent." (Defs.' Mot. for Summ. J. Ex. A (Settlement Agreement) (Doc. No. 22-2), at ¶ 4.) The Settlement Agreement further stated that defendants may deal in lithium batteries for use in smoke detectors, as well as smoke detectors with openable battery compartments that require lithium batteries, without paying royalties. (*Id.*).

## II.     Disputed models

Defendants made royalty payments under the Settlement Agreement until 2008. (Compl. ¶ 12–13.) Defendants claim to have ceased production of the SA10YR smoke detector and contend that no models produced after 2007 required royalty payments under the Settlement Agreement.[4] (Devine Decl. ¶ 7; Defs.' 56.1 Stmt. ¶ 16.) Plaintiff asserts that at least five of the post-2007 models require royalty payments under the Settlement Agreement.[5] (Pl.'s 56.1 Cntrstmt. ¶ 17.) As described more fully below, plaintiff alleges that manufacture and sale of the SA340 model smoke detector and the "E-Z Access" line of smoke detectors without payment of

---

[3] The cover of the SA10YR model smoke detector contains four male extensions with a prong at the end of each. The base contains four mating female extensions. To secure the cover to the base, the four male extentions were inserted into the female extensions until the prongs of the male extensions engaged internal prongs. Once the cover of the SA10YR is attached to the base, it requires a tool, such as a screwdriver, to disengage the prongs, which, if not carried out precisely, creates a high degree of likelihood that one or both prongs would be damaged in the process. (Defs.' 56.1 Stmt. ¶¶ 10–11; Pl.'s 56.1 Stmt. ¶¶ 10–11.)

[4] Plaintiff maintains that defendants dealt in the SA10YR model after 2008 and failed to pay royalties, Pl.'s 56.1 Cntrstmt. ¶ 16, but the instant motion is limited to the openability of the SA340 and "E-Z Access" models, as noted above.

[5] Plaintiff alleges that the SA340, SA302, SA304, SA305, and SA710 model smoke detectors are all unopenable within the meaning of the Settlement Agreement. (Pl.'s 56.1 Cntrstmt. ¶ 9; Serby Aff. Exs. 1–5). Plaintiff refers also to the SA340CN model interchangeably with the SA340. (Pl. 56.1 Cntrstmt. ¶¶ 9, 15; Serby Decl. ¶ 27.)

royalties violates the terms of the Settlement Agreement.  The "E-Z Access" models contain a battery compartment that slides or pivots open, but can be locked by inserting optional "locking pins."  (*Id.* ¶ 25.)  The SA340 model smoke detector attaches to the mounting device and may be opened by applying pressure to three latches.  (Serby Decl. Ex. 1 (SA340 User's Manual) (Doc. No. 22-10), at 5.)  The parties disagree with respect to the extent to which the powercell within the SA340's internal battery compartment is accessible.  (*See* Defs.' 56.1 Stmt. ¶¶ 34–36; Pl.'s 56.1 Cntrstmt. ¶¶ 34–36.)

In August 2009, plaintiff filed this action for breach of the Settlement Agreement in Kings County Supreme Court seeking $5 million in damages.  (Compl. ¶ 18.)  Defendants removed the action to this Court pursuant to 28 U.S.C. § 1446(a) on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  (Notice of Removal (Doc. No. 1) ¶ 5).  Defendants answered, and the parties proceeded with discovery limited to the issues presented in the instant motion: whether the SA340 and "E-Z Access" models are "unopenable" under the Settlement Agreement.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the nonmoving party.  *See id.* at 249 (citing *Adickes v. S.H. Kress & Co.,*

4

398 U.S. 144, 158–59 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). The court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996)). Any evidence in the record of a material fact from which an inference could be drawn in favor of the non-moving party precludes summary judgment. *See Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, then "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). However, there must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id.* at 586. Instead, the non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law" will properly preclude the entry of summary judgment. *Id.* at 248; *see also Matsushita,* 475 U.S. at 586.

Ordinarily, the complaint of a *pro se* plaintiff must be liberally construed and held to a less rigorous standard of review than pleadings drafted by an attorney. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). However, plaintiff is an experienced attorney licensed to practice in this Court, as well as the Southern District of New York, the District of New Jersey, the District of Connecticut, the Court of Appeals for the Federal Circuit, and the Second Circuit Court of Appeals. (Defs.' Mot. for Summ. J. Ex. K (Conf. Tr., Jan. 14, 2010) ("Conf. Tr.") (Doc. No. 22-

5

4), at 2; Serby Decl. ¶ 4.) Although the Court normally will hold the pleadings of a *pro se* plaintiff to a less rigorous standard of review, "as an experienced attorney the plaintiff's papers in this case are not entitled to such special consideration." *Maloney v. Cuomo*, 470 F. Supp. 2d 205, 209 (E.D.N.Y. 2007); *see Bliven v. Hunt*, 478 F. Supp. 2d 332, 334 (E.D.N.Y. 2007).

## DISCUSSION

### I. Construction of "unopenable"

To establish a claim for breach of contract a "complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). The Settlement Agreement constitutes an "agreement," and plaintiff's adequate performance is not at issue. At issue is whether defendants' smoke detectors are "unopenable" under the Settlement Agreement, so that their sale without payment of royalties to plaintiff constitutes a breach. The Settlement Agreement requires royalty payments for smoke detectors with a lithium battery "which have a battery compartment that is unopenable as is defined in Claims 5 or 10 of the ['434] Patent." (Settlement Agreement ¶ 4.)

Although the present suit is for breach of contract, therefore, the determination of whether defendants have breached the Settlement Agreement requires the Court to determine the meaning of "unopenable" in the 434 Patent. Courts look to the principles of patent law and contract law to interpret settlement agreements arising out of earlier claims of patent infringement. *See Panduit Corp. v. HellermannTyton*, 451 F.3d 819, 830 (Fed. Cir. 2006) (applying state law of contract and federal law of patent infringement to determine whether defendant breached settlement agreement of prior patent litigation); *accord Magnivision, Inc. v.*

*Bonneau Co.*, 250 F.3d 758 (table), No. 99–1093, 2000 WL 772323, at *10 (Fed. Cir. June 15, 2000).

On a summary judgment motion, "a court should accord [contractual] language its plain meaning . . . . [and] may construe it as a matter of law;" however, if "more than one meaning may reasonably be ascribed to the language used," then the contract is ambiguous and summary judgment generally is inappropriate. *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)). Moreover, " 'a paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it,' " binding the parties to the same extent as the terms of the contract. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (quoting *Jones v. Cunard S.S. Co.*, 263 N.Y.S. 769, 771 (App. Div. 1933)).

The resolution of a patent infringement claim involves two steps. First, the court must construe the patent's claims as a matter of law to determine their proper scope. Second, a jury generally determines the factual issue of whether infringement has occurred, unless there is no genuine issue of material fact, in which case summary judgment is appropriate. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *CA, Inc. v. Simple.com, Inc.*, No. 02-CV-7248(DRH), 2009 WL 7445199, at *2 (E.D.N.Y. Mar. 5, 2009) ("The standard for summary judgment in a patent case is the same as in any other case." (citing *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998) and *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1571 (Fed. Cir. 1984))).

Courts interpreting a disputed term in a patent claim look primarily to "the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing *Markman v. Westview*

*Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). When interpreting the words of the claim, a court must presume that the terms in the claim have " 'their ordinary and customary meaning,' " as understood by " 'a person of ordinary skill in the art in question at the time of the invention.' " *Infosint, S.A. v. H. Lundbeck A/S*, 603 F. Supp. 2d 748, 752 (S.D.N.Y. 2009) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)); *see Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998) ("Absent a special and particular definition created by the patent applicant, terms in a claim are to be given their ordinary and accustomed meaning.") Moreover, "[a] court construing a patent claim analyzes the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.

Thus, the first step in determining the meaning of "unopenable" is to look to the plain meaning of the term in the context of the Settlement Agreement. The only appearance of the term "unopenable" in the Settlement Agreement is the reference to "Claims 5 or 10 of the ['434] Patent." (Settlement Agreement ¶ 4). Claim 5 reads:

> The smoke detector of claim 1 further comprising a case, said case having an inside and an outside, said case having openings therein communicating between said inside and said outside to allow the entry of smoke from said outside to said inside, said electronic circuit and said battery contained within said case, said battery having a service life within said smoke detector of at least ten years, said case unopenable to deter physical access to said battery.

434 Patent col.7 l.8–17. Claim 10 reads:

> The smoke detector of claim 6 further comprising a case and smoke detection means, said case having an inside and an outside, said case having openings therein communicating between said inside and said outside to allow the entry of smoke from said outside to said inside, said electronic circuit and said battery and said smoke detection means contained within said case, said battery having a service life within said smoke detector of at least ten years, said case unopenable to deter physical access to said battery.

434 Patent col.8 l.17–26. The Claims give no further explanation of the term "unopenable" beyond "to deter physical access to the battery." The purpose of unopenability in the context of the 434 Patent, therefore, is to prevent easy access to the alarm battery by simply opening the case.

The 434 Patent specification supports this reading. *See ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374, 1381 (Fed. Cir. 2003) (noting that the specification "teaches about the problems solved by the claimed invention, the way the claimed invention solves those problems, and the prior art that relates to the invention . . . . provid[ing] valuable context for the meaning of the claim language" (internal quotation marks omitted)). The specification begins by stating plaintiff's purpose for inventing an unopenable smoke detector: to address the problems presented by earlier smoke detector models that required the batteries to be replaced frequently and could easily be snapped open. 434 Patent col.1, l.20–37. Residents and tenants in homes containing earlier smoke detectors would often remove the battery for use in other devices or simply to quiet the low-battery warning alarm, thus creating the hazardous conditions smoke detectors were designed to prevent. *Id.*

The patent specification states that "the primary purpose of the invention is to avoid the[se] safety problems." 434 Patent, col.2, l.15 The specification also states that a smoke detector with a "battery life of 15 years or more" is desirable in order to "allow[] the complete smoke detector to be housed in an unopenable case to deter battery removal." 434 Patent, col.2, l.35–38. The specification further provides that it is "preferred to place the assembled smoke detector circuitry inside an unopenable case, which prevents physical access, to further deter battery removal or tampering." 434 Patent, col.5, l.25–29. The specification describes the embodiment of an unopenable alarm as "an injection molded plastic two piece snap together

9

case, which will not come apart once snapped together." 434 Patent, col. 5, l.29–31. *See Phillips*, 415 F.3d at 1315 ("[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.' " (quoting *Vitronics*, 90 F.3d at 1582)); *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380 (Fed. Cir. 2005) ("The specification is of central importance in construing claims . . . ."). The Court is mindful of the fine line between permissibly reading a claim term in the context of the entire patent and improperly reading limitations from the specification into a claim term. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004); *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) ("The longstanding difficulty is the contrasting nature of the axioms that (a) a claim must be read in view of the specification and (b) a court may not read a limitation into a claim from the specification.").

Defendants' assertion that the term "unopenable" means that the "smoke detector [housing] cannot be opened by a consumer without damaging the structure of the case" is strongly supported by the language of the patent quoted above. (Defs.' Mem. in Supp. (Doc. No. 22-8) at 12.) The primary function of the unopenable smoke detector is to prevent access to the battery, and to serve this purpose the preferred embodiment would "not come apart once snapped together." 434 Patent, col. 5, l.25–31. Defendants' definition is entirely consistent with this purpose. Plaintiff contends, however, that "unopenable" as used in the Settlement Agreement and 434 Patent refers to *any* "housing which prevents physical access to the battery to deter removal." (Serby Decl. ¶ 24.) Under plaintiff's definition, a housing that, to whatever minimal extent, inhibits access to the battery is "unopenable" because any encasement, however flimsy,

10

will require removal before the battery can be accessed, thus deterring battery access.[6] This definition is too broad. *See, e.g.*, *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1352 (Fed. Cir. 2009); *PureChoice, Inc. v. Honeywell Int'l, Inc.*, 333 F. App'x 544, 547 (Fed. Cir. 2009). Plaintiff's definition, moreover, excludes the embodiment housing that "will not come apart once snapped together" because a housing that comes apart after being snapped together would, to some degree, "prevent physical access" consistent with plaintiff's proposed definition. 434 Patent, col. 5, l.29–31 (embodiment); *see SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("A claim construction that excludes a preferred embodiment, moreover, 'is rarely, if ever, correct.'" (quoting *Vitronics*, 90 F.3d at 1583)); *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 865 (Fed. Cir. 2004). Nor would plaintiff's definition address the problems mentioned in the specification concerning consumers' tendency to remove batteries from smoke detectors. 434 Patent col.1, l.26.

For purposes of the 434 Patent and Settlement Agreement, therefore, the Court finds that a smoke detector is "unopenable" when the housing of the smoke detector cannot be opened by a consumer without damaging the structure of the case, as necessary to deter physical access to the battery, *i.e.*, a smoke detector with a housing that, once assembled, will not come apart, so as to deter physical access to the battery.[7] Since the ordinary meaning of "unopenable" is clearly and

---

[6] If Plaintiff's definition refers to a housing that could not be opened by *any means*, it is too narrow, because, as plaintiff himself admitted in a conference before the Court, all encasements can be opened by extreme deformation, for example, by striking with a hammer. (Conf. Tr. at 16.) Plaintiff, in the same conference, asserted that the SA10YR model infringed, in part, because he "had to physically rip it open[]" to access the internal circuitry and battery, thus lending further support to defendants' definition.

[7] This definition is consistent with the dictionary's definition, which defines "openable" as "capable of being opened" and "un-" as a prefix meaning "not," so that the phrase in Claims 5 and 10, "unopenable to deter physical access to [the] battery" means incapable of being opened, to the extent necessary to deter internal access. *See* Webster's Third New International Dictionary 1579, 2481 (1961); *see also Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1349 (Fed. Cir. 2005) (noting that "courts may 'rely on dictionary definitions when construing claim terms' and that '[d]ictionaries . . . are often useful to assist in understanding the commonly understood meaning of words'" and cautioning that "court[s] must ensure that any reliance on dictionaries accords with the intrinsic evidence: the claims themselves, the specification, and the prosecution history." (quoting *Phillips*, 415 F.3d at 1322)).

unambiguously ascertainable from the 434 Patent, leaving no room for multiple contradictory interpretations, the Court shall apply this plain meaning and interpret the Settlement Agreement exactly as written with no need to assess the subjective intent of the parties or reference additional extrinsic sources.

II.     **Application to the SA340 model**

The cover of the SA340 smoke detector attaches to the mounting device and may be opened by applying pressure to three mating latches.[8] (SA340 User's Manual at 2; Pl.'s 56.1 Cntrstmt. ¶ 31.)  Unlike the "EZ Access" models, the battery compartment of the SA340 model is contained entirely within the body of the smoke detector, and the cover must be removed to access the battery compartment.  (*See* Pl.'s 56.1 Cntrstmt. ¶ 35.)  Defendants contend that the battery pack and powercell can then be removed "by pushing two plastic hooks and sliding the battery pack out of the rear of the smoke detector."  (Defs.' 56.1 Stmt. ¶ 35; *see* Devine Decl. ¶ 14.)

Plaintiff contends, however, that the powercell cannot be removed or otherwise accessed, thus rendering the SA340 model "unopenable" within the meaning of the Settlement Agreement. Plaintiff relies on the User's Manual, which states that "the powercell cannot be removed after it is locked into the alarm." (Pl.'s 56.1 Cntrstmt. ¶¶ 31, 34; SA340 User's Manual at 4, 5.)  The User's Manual explains that the lithium battery cannot be removed or replaced, that once the powercell expires the entire unit must be replaced, and that the SA340 is designed to be

---

[8] Plaintiff's submissions are less than clear, but, to the extent plaintiff claims that the cover of the SA340 model, once mounted, cannot be removed, or that the SA340 unit cannot be removed from the mounting plate, the claim is belied by plaintiff's contention that the entire unit must be removed and replaced once the powercell expires, and plaintiff's submission of detailed diagrams demonstrating removal of the SA340 from the mounting bracket. (*See* Pl.'s 56.1 Cntrstmt. ¶¶ 31, 34–35; SA340 User's Manual at 5; *see also Hartley v. Rubio*, No. 08-CV-4461(NRB), 2011 WL 1332198, at *17 n.1 (S.D.N.Y. Mar. 29, 2011) (internal contradictions in a party's summary judgment submissions are insufficient to create genuine issue of material fact) (citing cases).  In any case, as plaintiff himself asserts, "the method of securing the cover to the base is not determinative as to whether a particular smoke detector is openable." (Pl.'s 56.1 Cntrstmt. ¶ 10.)

"tamperproof" with respect to battery removal.  (Pl.'s 56.1 Cntrstmt. ¶ 34; *see also* SA340 User's Manual at 1, 4.)  Defendants reject the importance plaintiff places upon the user manual, contending that "the statements in the literature go to BRK's intent with respect to consumer actions."  (Defs.' Reply Mem. in Supp. (Doc. No. 22-18) at 4–5; *see also* Conf. Tr. at 15 (describing the statements in the manual as "unfortunate" or "untrue").)

On summary judgment, however, the Court must draw all inferences in favor of the non-moving party.  Plaintiff has come forward with admissible evidence creating a genuine issue of material fact as to whether the SA340 smoke detector's battery compartment and powercell can be accessed and removed.  A reasonable jury could find, based on plaintiff's evidence, that the SA340 case is designed in such a way to prevent access and removal of the battery.  Indeed, the User's Manual continues: "Warning!  Alarm is sealed.  The powercell is not replaceable.  Once it reaches the end of its service life, or after 10 years – whichever comes first – you must install a new Smoke Alarm," and that "[t]he powercell cannot be removed after it is locked into the Alarm."  (SA340 User's Manual at 4–5.)  Thus, the User's Manual is concrete evidence from which a reasonable jury could find that the housing of the SA340 model does not come apart to the extent necessary to allow access to the battery, thus rendering it "unopenable."  *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009) (affirming jury finding of direct infringement based in part on user manuals for the product in question as circumstantial evidence).  Moreover, if plaintiff's evidence is accurate, the SA340 model would prevent removal or theft of the powercell, serving the purpose for which plaintiff designed the 434 Patent.  Therefore, viewing the evidence in the light most favorable to plaintiff, there is an issue of fact as to whether the SA340 model is "unopenable" for purposes of the Settlement

13

Agreement, and summary judgment is denied with respect to whether defendants' manufacture and sale of the SA340 model without payment of royalties is a breach.

### III. Application to the "E-Z Access" models

The "E-Z Access" products[9] feature an "E-Z access battery door," a latch that permits the battery compartment to either pivot or slide open. (Pl.'s 56.1 Cntrstmt. ¶ 18.) The "E-Z Access" products are sold with two locking pins which can be installed to lock the smoke detector to a mounting plate and lock the battery door. (*Id.* at ¶ 25.) A User's Manual, which describes the locking pins as an "optional" feature, includes instructions for both locking and unlocking the smoke detector. (Pl.'s 56.1 Cntrstmt. ¶ 17; *see* Serby Decl. Ex. 2 (SA305 User's Manual) (Doc. No. 22-11), at 2.[10]) Once the locking pins are inserted, they can be removed with a screwdriver or pliers, or possibly by hand. (Pl.'s 56.1 Cntrstmt. ¶ 27; SA305 User's Manual at 2.) Plaintiff asserts that the "E-Z Access" models are unopenable because once the locking pins are inserted, the battery compartments are not physically accessible, and, plaintiff argues, no different from the original SA10YR model covered by the Settlement Agreement. (Serby Decl. ¶ 24 ("[T]he inclusion of locking pins in each of the smoke detector packages with instructions on how to use them to prevent physical access to the battery to deter unauthorized removal of the battery . . . makes these model[s] . . . 'unopenable.' ").)

The Court finds, however, that the ability to lock and unlock a smoke detector does not render it "unopenable" for purposes of the Settlement Agreement. As noted above, a smoke detector housing is "unopenable" under the Settlement Agreement if, once assembled, it will not

---

[9] The "E-Z Access" models include the SA302, SA304, SA305, and SA710 models. (Pl.'s 56.1 Cntrstmt. ¶ 17; Devine Decl. ¶¶ 18–20.)

[10] Exhibits 2 through 5 to plaintiff's declaration are the User's Manuals for the "E-Z Access" models. Where the Manuals are substantially similar, the Court, for the sake of brevity, will cite to Exhibit 2, the User's Manual for the SA305, as typical of the "E-Z Access" models. (*See also* Pl.'s 56.1 Cntrstmt. ¶ 17 (SA305 User's Manual provisions are "typical" of the "E-Z Access" models).)

14

come apart without damage to the structure, to deter physical access to the battery. Therefore, a smoke detector that could be opened and reassembled to allow repeated access to the battery, without physical damage to the structure, would not be "unopenable" under the meaning of the 434 Patent. The "E-Z Access" model is distinct from the SA10YR model that gave rise to the 1995 litigation in that the "E-Z Access" model, once snapped together, *will* come apart without damage to the structure, and allow access to the battery, once the user removes the locking pins, as explained in the User's Manual. *See Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 995 (Fed. Cir. 2009) (finding that the mere capability of operation of a candle tin in an infringing configuration is insufficient for infringement where the claim language does not "specif[y] that the claim is drawn to capability"); *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002) (potentially infringing configuration is not *per se* infringement); *see also ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313–14 (Fed. Cir. 2007) ("In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit. . . . 'The mere sale of a product capable of substantial non-infringing uses does not constitute indirect infringement of a patent.' " (quoting *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275 (Fed. Cir. 2004))). Thus, there is no genuine issue of material fact as to whether the "E-Z Access" products are "unopenable" under the Settlement Agreement, and the Court concludes as a matter of law that the continued production and sale of the "E-Z Access" models without payment of royalties does not violate the Settlement Agreement.

## CONCLUSION

For the reasons set forth in this Memorandum and Order, defendants' motion for summary judgment (Doc. No. 22) is GRANTED in part and DENIED in part. This matter is recommitted to the assigned Magistrate Judge for all remaining pre-trial issues, to supervise the preparation of a Joint Pre-Trial Order, and for any settlement discussions.

SO ORDERED.

Dated: Brooklyn, New York
       September 26, 2011

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge