UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                        :
VICTOR M. SERBY,                              :        DECISION AND ORDER
                        :
             Plaintiff,         :
                        :        09-cv-4229 (WFK)
      -against-          :
                        :
FIRST ALERT, INC. and BRK BRANDS, INC.,  :
                        :
           Defendants.  :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

Victor M. Serby ("Plaintiff"), an attorney proceeding *pro se*, brought this action in the Supreme Court of the State of New York, Kings County, against First Alert, Inc. ("First Alert") and its subsidiary BRK Brands, Inc. ("BRK") (collectively "Defendants"), which then removed the case to this Court. Plaintiff alleges Defendants manufacture, distribute, and sell various smoke detectors without payment of royalties to Plaintiff, in breach of a pre-existing settlement agreement from a prior, related, patent infringement litigation. *See* Notice of Removal, Dkt. 1, at 7–10 ("Complaint") ¶¶ 10–16. Currently before the Court is Plaintiff's motion for summary judgment and to strike Defendant's affirmative defenses pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, Plaintiff's motion is denied in its entirety.

## BACKGROUND

The following facts are either undisputed or described in the light most favorable to Defendants, the non-moving parties. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Plaintiff is the owner of U.S. Patent No. 5,444,434 ("the '434 Patent"), entitled

"Extended Life Smoke Detector." Resp. of Defs.'/Counterclaimants to Pl.'s St. of Material Facts and Counterst. of Facts Pursuant to Local R. 56.1(b) ("Defs.' 56.1 St" and "Defs.' 56.1 Counterst."),[1] Dkt. 44, at ¶ 1; Decl. of Gerard Schiano-Strain in Opp. to Pl.'s Mot. for Summ. J. ("Schaino-Strain Decl."), Ex. A (U.S. Patent No. 5,444,434). BRK is a manufacturer and distributor of home safety and security products, including smoke detectors. Defs.' 56.1 Counterst., at ¶ 1. Defendant First Alert is the parent company of Defendant BRK. *Serby v. First Alert, Inc., et al.*, 09-cv-4229, 2011 WL 4464494, at *1 (E.D.N.Y. Sept. 26, 2011) (Mauskopf, J.). BRK sells its products under the "First Alert" brand name. *Id.*

***Previous Litigation and Settlement***

In 1995, Plaintiff brought an action in the Eastern District of New York (the "1995 Action" alleging, *inter alia*, that Defendants' SA10YR model smoke detector infringed the '434 Patent. Pl.'s 56.1 St., at ¶ 5; Defs.' 56.1 Counterst. at ¶ 2. The SA10YR model smoke detector had a cover attached to a base, which cover was not intended to be removed by the consumer. Defs.' 56.1 Counterst. at ¶ 3. The smoke detector also had a battery compartment containing a lithium battery with a working life of at least ten years. *Serby*, 2011 WL 4464494, at *1.

Defendants filed an answer to the 1995 Action and interposed various affirmative defenses, including: (1) they had not infringed the '434 Patent; (2) the '434 Patent was invalid and unenforceable because it failed to satisfy the conditions of patentability and failed to comply with the requirements of Title 35 of the United States Code; (3) the '434 Patent was unenforceable due to Plaintiff's inequitable conduct; (4) Plaintiff was not entitled to enhanced

---

[1] Defendants submitted, as a single document, responses to Plaintiff's Statement of Material Facts and a Counter-Statement of Material Facts pursuant to Local Rule 56.1. Defendants restarted the numbering in the counter-statement, meaning that the document has two paragraphs 1, two paragraphs 2, etc. For clarity, the Court refers to the first half of the document as "Defs.' 56.1 St." and the second (re-numbered) half of the document as "Defs.' 56.1 Counterst."

2

damages because any infringement was neither willful, deliberate, nor intentional; and (5) Plaintiff's conduct entitled Defendants to an award of attorneys' fees. Notice of Removal, Dkt. 1, at 27–32 (Defs.' answer in the 1995 Action). Defendants also asserted a counterclaim for a declaration of patent non-infringement and invalidity. *Id.*

In April 1997, Plaintiff and Defendants entered into a Settlement, License and Mutual Release Agreement (the "Settlement Agreement"), requiring Defendants to pay Plaintiff a 5% royalty on Defendants' "net sales of smoke detectors which incorporate a lithium battery, meet all other limitations of Claims 5 or 10 of the Serby Patent and which have a battery compartment that is unopenable." Settlement Agreement at ¶ 4. The Settlement Agreement further stated that Defendants could manufacture, sell, distribute, or otherwise deal in lithium batteries for use in smoke detectors, as well as smoke detectors with openable battery compartments that require lithium batteries, without paying royalties. *Id.*

*Current Dispute*

Defendants made royalty payments under the Settlement Agreement until 2008. Compl. at ¶ 13. Defendants claim to have ceased the production and sale of the SA10YR smoke detector in response to changed industry standards. Defs.' 56.1 Counterst. ¶ 7–10. Defendants replaced the SA10YR model with the SA340 model smoke alarm. Defs.' 56.1 Counterst. ¶ 10. Unlike the SA10YR model, the SA340 model allows a consumer to open the case, remove the battery compartment, and open the battery compartment. *Id.* at ¶ 11. Because of these changes, Defendants claim that the SA340 is not "unopenable" under the terms of the Settlement Agreement and therefore they are not required to pay royalties on the SA340 model. *Id.* at ¶ 17. Plaintiff disagrees and asserts that Defendants are required to pay him royalties on the SA340 under the terms of the Settlement Agreement. Pl.'s 56.1 St. at ¶ 9.

In August 2009, Plaintiff filed this action for breach of the Settlement Agreement in the Supreme Court of the State of New York, Kings County, seeking $5 million in damages. Compl., at ¶ 18. Defendants removed the action to this Court pursuant to 28 U.S.C. § 1446(b) on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Notice of Removal, at ¶ 5. After removing, Defendants filed an answer which alleged various affirmative defenses, including, *inter alia*: (1) the complaint fails to state a cause of action; (2) Plaintiff breached the Settlement Agreement by disclosing its terms and existence without first obtaining the prior written approval of Defendants; (3) Plaintiff's claims are barred by the doctrines of waiver, estoppel, and/or clean hands; (4) all claims of the '434 Patent are invalid under 35 U.S.C. § 101 because Plaintiff did not invent or discover any new and useful process or machine, or any new and useful improvements thereof; (5) all claims of the '434 Patent are invalid under 35 U.S.C. § 102 because, *inter alia*, Plaintiff is not the first inventor of the subject matter of the '434 Patent and the invention was known or used by others before Plaintiff's alleged invention; (5) the '434 Patent is invalid under 35 U.S.C. § 103 because the differences between its subject matter and prior art are obvious to a person having ordinary skill; (6) Plaintiff failed to disclose material information that would have prevented issuance of the '434 Patent, rendering the patent unenforceable; and (7) estoppel. Schiano-Strain Decl., Ex. E (Defs.' Answer). Defendants also counterclaimed for a declaration of unenforceability and invalidity of the '434 Patent. *Id.*

Presently before the Court is Plaintiff's motion for summary judgment and to strike Defendants' affirmative defenses. Plaintiff argues that Defendants' affirmative defenses and counterclaims are barred by the doctrines of *res judicata* and collateral estoppel because they were litigated and decided in the 1995 action when that action concluded with a Rule 41

4

dismissal. Plaintiff further argues that these affirmative defenses and counterclaims are barred by the Settlement Agreement.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a motion for summary judgment,"[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.2011) (internal quotation marks and citations omitted).

Once the movant has demonstrated that no genuine issue of material fact exists, then "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in original). The non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

## ANALYSIS

### I.     Choice of Law

As a preliminary matter, this Court must decide whether to apply the law of New York or the law of the Federal Circuit. According to Plaintiff, New York law applies to this dispute because the Settlement Agreement states that it "shall be governed by New York law." Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 3–5; Settlement Agreement ¶ 12. Defendants, by contrast, argue that Federal Circuit precedent applies because a federal district court is required to follow the Federal Circuit in cases arising under the patent laws. Defs.' Mem. of Law in Opp. to Pl.'s Mot. for Summ. J. ("Defs.' Opp."), Dkt. 44, at 13–15.

The United States Court of Appeals for the Federal Circuit has "exclusive jurisdiction of an appeal from a final decision of a district court of the United States . . . in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1).[2] The corollary of that jurisdictional grant is that a "district court must . . . follow Federal Circuit precedent in a case arising under the patent laws." *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 475 (Fed. Cir. 1991). In determining which law should apply in particular cases, the Federal Circuit has held that Federal Circuit law applies "to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right." *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001) (internal quotation marks and citation

---

[2] Plaintiff cites *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 829–34 (2002), for the proposition that the "Federal Circuit cannot assert jurisdiction over a case in which the complaint does not allege a patent-law claim, but the answer contains a patent-law claim." Pl.'s Reply Mem. of Law in Further Support of Pl.'s Mot. for Summ. J. and to Strike Affirmative Defenses at 1. However, *Holmes*, which overturned established law in the Federal Circuit, was based on an earlier version of 28 U.S.C. § 1295(a)(1). In 2011, Congress amended the statute to explicitly restore the Federal Circuit's jurisdiction over cases that contain patent law counterclaims. *See* Leahy-Smith America Invents Act of 2011, Pub. L. No. 112-29, § 19., 125 Stat. 284, 331 (2011). Consequently, Plaintiff's reliance on *Holmes* is misplaced.

6

omitted). "[T]he question of whether a settlement agreement bars a party from challenging the validity of a patent in a subsequent action is intertwined with the substance of enforcement of a patent right" and thus Federal Circuit law applies. *Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1361 (Fed. Cir. 2010).

This case raises the same issue as *Baseload*—whether a settlement agreement bars a party from raising various affirmative defenses against a patent, including patent invalidity, in a subsequent action. *See id.* Consequently, this Court is bound to apply the law of the Federal Circuit.

## II.  *Res Judicata*

"In its simplest construct, *res judicata* precludes the relitigation of a claim, or cause of action, or any possible defense to the cause of action which is ended by a judgment of the court." *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 476 (Fed. Cir. 1991). "This aspect of *res judicata,* known in modern parlance as 'claim preclusion', applies whether the judgment of the court is rendered after trial and imposed by the court or the judgment is entered upon the consent of the parties." *Id..* Once a judgment has been entered, a "plaintiff may not thereafter maintain another action on the same 'claim,' and defenses that were raised or *could have been* raised by the defendant in that action are extinguished." *Id.* at 478 (emphasis in original).

Plaintiff argues that Defendants are barred from relitigating many of the defenses they interposed in the 1995 lawsuit "by the doctrines of *res judicata* and/or collateral estoppel." Pl.'s Mot. at 1. To determine whether *res judicata* applies, this Court must determine whether this suit presents the same claim as that of the 1995 action. *Foster*, 947 F.2d at 478.

A "claim" does not include mere "argument[s]" or "assertion[s]" but rather refers to the "facts giving rise to the suit." *Id.* (citing Restatement (Second) of Judgments § 24). A claim therefore "rests on a particular factual transaction." *Id.* "An assertion of invalidity of a patent

7

by an alleged infringer is not a 'claim' but a defense to the patent owner's 'claim.'" *Id.* Thus, in the patent context, the Federal Circuit has held that "[w]hile defenses to a 'claim' are extinguished by application of the doctrine of claim preclusion, the facts related to the defense [i.e., whether or not a patent is invalid] do not in themselves constitute the transaction or 'claim.'" *Id.* at 479. For that reason, claim preclusion applies to a defense like patent invalidity only if the underlying claim of patent infringement rests on the same transactional facts as the earlier action. *Id.*; *accord Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1326 (Fed. Cir. 2008).

"An essential fact of a patent infringement claim is the structure of the device or devices in issue." *Foster*, 947 F.2d at 479; *Acumed*, 525 F.3d at 1326. Thus, in order for claim preclusion to apply, the devices that allegedly infringe the patent in both suits must be "essentially" the same. *Foster*, 947 F.2d at 479–80; *Acumed*, 525 F.3d at 1326; *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1326–27 (Fed. Cir. 2008) ("[C]laim preclusion [does] not bar [a] defendant's later [] action challenging those patents' validity if the devices involved in the two suits were not 'essentially the same.'"). The party asserting claim preclusion bears the burden to show that the two devices are essentially the same. *Foster*, 947 F.2d at 480.

In this case, there is a genuine issue of material fact whether Defendants' SA340 model smoke alarm is essentially the same as the SA10YR model smoke alarm that was the subject of the 1995 lawsuit. According to Defendants, the SA340 model allows the consumer to open the case of the smoke alarm, remove the battery compartment from the smoke alarm, and open the battery compartment to expose the batteries. Defs.' 56.1 Counterst. at ¶¶ 11–13. By contrast, the SA10YR model, which was the subject of the 1995 litigation, had a cover that was not

8

intended to be removed from the base and that could not be removed without causing structural damage to the device. *Id.* at ¶¶ 3–4. In addition, the SA10YR batteries were mounted directly to the main circuit board, and thus could not be removed from the smoke alarm. Defs.' Opp. at 7. Because there is a genuine issue of material fact as to whether the two smoke alarms are essentially the same, summary judgment on the basis of claim preclusion is inappropriate. *See Foster*, 947 F.2d at 480; *Nasalok*, 522 F.3d at 1327.

### III. Collateral Estoppel

In addition to *res judicata*, Plaintiff argues that collateral estoppel bars Defendants from raising any of the affirmative defenses or counterclaims raised in the 1995 Action. Under the doctrine of collateral estoppel, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Foster*, 947 F.2d at 480 (citing Restatement (Second) of Judgments § 27). However, "[w]here a judgment between parties is entered by consent prior to trial on any issue, no issue may be said to have been fully, fairly or actually litigated." *Id.* (citing Restatement (Second) of Judgments § 27, comment (e)).

In this case, the 1995 Action ended in a settlement agreement and a Rule 41 dismissal with prejudice. The issues raised in Defendants' affirmative defenses and counterclaims, including the validity of Plaintiff's '434 Patent, were therefore never actually litigated, nor was there any final judgment on them. Consequently, collateral estoppel does not bar Defendants from relitigating these issues.

However, the Federal Circuit has recognized that there is a variation of issue preclusion, sometimes called "contractual estoppel," that is based on consent judgments and "that is not dependent on actual litigation of the matter." *Id.* (citing Restatement (Second) of

9

Judgments § 27, comment (e)). Under this doctrine, "the [issue preclusive] effect results not from the rule of [Restatement (Second) of Judgments] § 27 but from an agreement manifesting an intention to be bound." *Id.* (internal editing omitted). "Thus, if a consent judgment, by its terms, indicates that the parties thereto intend to preclude any challenge to the validity of a particular patent, even in subsequent litigation involving a new cause of action, then that issue can be precluded." *Id.* at 480–81; *Flex-Foot*, 238 F.3d at 1370 ("Once an accused infringer has challenged patent validity, has had an opportunity to conduct discovery on validity issues, and has elected to voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear and unambiguous undertaking not to challenge validity and/or enforceability of the patent in suit, the accused infringer is contractually estopped from raising any such challenge in any subsequent proceeding.").

In determining whether a consent judgment precludes litigation of particular affirmative defenses and counterclaims, such as the validity of patent, the Federal Circuit has held that consent judgments "must be narrowly construed." *Foster*, 947 F.2d at 481; *see also Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352 (Fed. Cir. 1999) ("[A]ny surrender of the right to challenge validity of a patent is construed narrowly."). A court should not "speculate as to the intent of the parties based on broad, general and ambiguous language." *Foster*, 947 F.2d at 481. Consequently, "a party does not waive its right to challenge the validity of a patent as to future accused products absent a clear intent to do so." *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1376 (Fed. Cir. 2002).

A number of decisions from the Federal Circuit shed light on the kind of language required in a consent judgment to preclude a party from later challenging a patent's validity or enforceability. For example, in *Foster*, the Federal Circuit held that the alleged infringer was

not precluded from challenging the validity of the patent where the consent decree stated that the patents were "valid and enforceable in all respects" and that the consent judgment was "binding upon and constitutes *res judicata* between the parties." *Foster*, 947 F.2d at 481. In that case, the Federal Circuit concluded that "the language of the decree is ambiguous with respect to barring the defense of invalidity with respect to different devices charged to be infringements," and thus that contractual preclusion was unavailable. *Id. at 482.* By contrast, in *Flex-Foot*, the Federal Circuit found it indisputable that contractual estoppel applied where an agreement contained explicit language that the alleged infringer agreed "not to challenge or cause to be challenged, directly or indirectly, the validity or enforceability of [the] patent . . . in any court or other tribunal," and that the alleged infringer "waives any and all invalidity and unenforceability defenses in any future litigation, arbitration, or other proceeding." *Flex-Foot*, 238 F.3d at 1364, 1367–68.

To determine whether to give the Settlement Agreement in this case preclusive effect, this Court must therefore turn to the language of the agreement itself. Paragraph 10 of the Settlement Agreement states:

> First Alert and BRK, their officers, employees, agents, servants, successors and assigns do hereby release and forever discharge Serby, his agents, successors and assigns from any and all claims or actions which First Alert and BRK now have, may have or may claim to have whether arising by tort, contract or statute, whether the same be known or unknown or hereafter discovered, as of the date of this Agreement, including, without limiting the generality of the foregoing, all counterclaims which were raised or could have been raised in the Action brought by Serby against First Alert and BRK except for any claims or actions arising for a breach of this Agreement.

As the above cases demonstrate, this language is insufficient to raise contractual estoppel in a future case between Plaintiff and Defendants concerning devices other than the SA10YR model smoke alarm. Unlike in the cases already described, the Settlement Agreement in this case did not explicitly agree state that the '434 Patent was valid and enforceable, nor did it

11

explicitly prohibit Defendants from challenging the '434 Patent's validity and enforceability in any future actions. Defendants did agree to release and discharge Plaintiff from any or all claims, including defenses and counterclaims, which were raised or could have been raised in the 1995 action. But the Federal Circuit has repeatedly held that this kind of broad language releasing "any and all claims" is insufficient, in the absence of a specific clause declaring that the patent is valid and prohibiting the alleged infringer from challenging the patent in future actions, is insufficient to waive a party's right to challenge the validity of a patent in future actions regarding different products. *Foster*, 947 F.2d at 481; *Baseload Energy*, 619 F.3d at 1361; *Ecolab*, 285 F.3d at 1376. Consequently, this Court concludes that Defendants' affirmative defenses and counterclaims are not barred by contractual estoppel.

### IV.   Pleading Standards

Finally, Plaintiff contends that most of Defendants' affirmative defenses and counterclaims must be struck because they fail to satisfy the pleading requirements of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007). Pl.'s Mot. at 7–8. It is unclear how *Twombly*, which concerns "a *plaintiff's* obligation to provide the grounds of his entitlement to relief," 550 U.S. at 555 (internal editing omitted and emphasis added), applies to affirmative defenses contained in a defendant's answer. Indeed, courts have split over this question, with some extending *Twombly*'s heightened pleading standard to affirmative defenses and others rejecting its application to this context. *See Lane v. Page*, 272 F.R.D. 581, 590 n.5–6 (D.N.M. 2011) (Browning, J.) (collecting cases).

This Court concludes that the pleading standards announced in *Twombly* do not apply to affirmative defenses. *Twombly* addressed the requirements of a pleading under Rule 8(a) of the Federal Rules of Civil Procedure, which explicitly requires "a short and plain statement of the claim showing that the pleader is entitled to relief." As a result, a plaintiff must plead facts

sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. By contrast, Rule 8(c) governs the pleading of affirmative defenses. Fed. R. Civ. P. 8(c). Under that provision, a defendant is required only to "state" the affirmative defenses it intends to raise. *Id.* There is no requirement under Rule 8(c) that a defendant plead any facts at all. *See Lane*, 272 F.R.D. at 591–94; *Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1258 (D. Kan. 2011).

Pragmatic and policy considerations also weigh against imposing the same pleading requirements on plaintiffs and defendants. *Lane*, 272 F.R.D. at 595–96. Unlike a plaintiff, who may have years to research and prepare a complaint, a defendant has a limited time within which to file an answer. *See* Fed. R. Civ. P. 12(a)(1)(A); *see also Falley*, 787 F. Supp. 2d at 1258–59; *Holdbrook v. SAIA Motor Freight Line, LLC*, No. 09-CV-02870, 2010 WL 865380, at *2 (D. Colo. Mar. 8, 2010). In addition, while a defendant is deemed to admit the allegations in a complaint if he or she does not respond, a plaintiff may largely ignore an answer without formal legal consequence. *Lane*, 272 F.R.D. at 596. A defendant, by contrast, risks waiving affirmative defenses that are omitted from its answer. *See* Fed. R. Civ. P. 12(g)(2), (h)(1)(A); *Lane*, 272 F.R.D. at 596. For these reasons, whether to grant a motion to strike "is viewed as determinable only after discovery and a hearing on the merits. A court may therefore strike only those defenses so legally insufficient that it is beyond cavil that defendants could not prevail upon them." *Lane*, 272 F.R.D. at 596 (internal quotation marks and citation omitted). Consequently, a defendant should be permitted to seek discovery to develop the "necessary factual background" for its defenses before "a premature evaluation of a defense's merits." *Trs. of Local 464A United Food & Commercial Workers Union Pension*

*Fund v. Wachovia Bank, N.A.*, No. 09-cv-668, 2009 WL 4138516, at *1 (D.N.J. Nov. 24, 2009).

### V.    Conclusion

For the reasons described above, this Court finds that Defendants' affirmative defenses and counterclaims are not barred by *res judicata*, collateral estoppel, or contractual estoppel. Plaintiff's motion for summary judgment and to strike Defendants' affirmative defenses and counterclaims is therefore DENIED in its entirety.

**SO ORDERED**

Dated: Brooklyn, New York
       March 27, 2013

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge