UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

VICTOR M. SERBY,

                Plaintiff,

                -against-

FIRST ALERT, INC. and BRK BRANDS, INC.,

                Defendants.

-------------------------------------------------------------------X

**<u>DECISION AND ORDER</u>**

09-CV-4229 (WFK) (VMS)

**WILLIAM F. KUNTZ, II, United States District Judge**

Victor M. Serby ("Plaintiff"), an attorney proceeding *pro se*, brought this action in the Supreme Court of the State of New York, Kings County, against First Alert, Inc. ("First Alert") and its subsidiary BRK Brands, Inc. ("BRK") (collectively "Defendants"), which then removed the case to this Court. Plaintiff alleges Defendants manufacture, distribute, and sell various smoke detectors without payment of royalties to Plaintiff, in breach of a pre-existing settlement agreement from a prior, related, patent infringement litigation. Currently before the Court is Defendants' motion for summary judgment of patent invalidity and non-infringement pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' motion for summary judgment based on invalidity is DENIED. Defendants' motion for summary judgment based on non-infringement is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts are either undisputed or described in the light most favorable to

Plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d

Cir. 2005). Plaintiff is the owner of U.S. Patent No. 5,444,434 ("the '434 Patent"), entitled

"Extended Life Smoke Detector." Dkt. 68 (Counterstatement of Material Facts [Local Rule

56.1(b)] ("CMF")) at ¶ 2; Dkt. 61 (Decl. of Barry E. Negrin in Support of Defendants' Motion

for Summary Judgment ("Negrin Decl.")), Ex. A. BRK is a manufacturer and distributor of

home safety and security products, including smoke detectors. Defendant First Alert is the parent company of Defendant BRK. *Serby v. First Alert, Inc., et al.*, 09-cv-4229, 2011 WL 4464494, at *1 (E.D.N.Y. Sept. 26, 2011) (Mauskopf, J.). BRK sells its products under the "First Alert" brand name. *Id.*

### 1995 Action and Settlement

In 1995, Plaintiff brought an action in the Eastern District of New York (the "1995 Action") alleging, *inter alia*, that Defendants' SA10YR model smoke detector infringed the '434 Patent. CMF at ¶ 3. Defendants filed an answer to the 1995 Action and interposed various affirmative defenses, including: (1) they had not infringed the '434 Patent; (2) the '434 Patent was invalid and unenforceable because it failed to satisfy the conditions of patentability and failed to comply with the requirements of Title 35 of the United States Code; (3) the '434 Patent was unenforceable due to Plaintiff's inequitable conduct; (4) Plaintiff was not entitled to enhanced damages because any infringement was neither willful, deliberate, nor intentional; and (5) Plaintiff's conduct entitled Defendants to an award of attorneys' fees. Dkt. 1 ("Notice of Removal") at 27–32 ("Defs' Answer in the 1995 Action"). Defendants also asserted a counterclaim for a declaration of patent non-infringement and invalidity. *Id.*

In April 1997, Plaintiff and Defendants entered into a Settlement, License, and Mutual Release Agreement (the "Settlement Agreement"), whereby the parties agreed to settle the 1995 Action. CMF at ¶ 4; Negrin Decl., Ex. B. Under the Settlement Agreement, Defendants were required to pay Plaintiff a 5% royalty on Defendants' "net sales of smoke detectors which incorporate a lithium battery, meet all other limitations of Claims 5 or 10 of the ['434 Patent] and which have a battery compartment that is unopenable." Negrin Decl., Ex. B at ¶4. As a result, Defendants began paying royalties due to Plaintiff under the Settlement Agreement,

which included the payment of royalties in connection with the sales of the SA10YR model smoke detector. CMF at ¶ 6.

### Current Dispute over the '434 Patent

Defendants made royalty payments under the Settlement Agreement until 2008. Compl., at ¶ 13. At that point, Defendants claim to have ceased the production and sale of the SA10YR model smoke detector in response to changed industry standards and claim to have replaced the SA10YR model with the SA340 smoke detector model. CMF at ¶¶ 7-8, 10. Plaintiff claims that Defendants were nonetheless required to pay him royalties on the SA340 smoke detector model under the terms of the Settlement Agreement. CMF at ¶ 11.

In August 2009, Plaintiff filed this action for breach of the Settlement Agreement in the Supreme Court of the State of New York, Kings County, alleging that Defendants failed to make the appropriate payments under Paragraph 4 of the Settlement Agreement and seeking $5 million in damages. Compl., at ¶¶ 13, 18. Defendants removed the action to this Court pursuant to 28 U.S.C. § 1446(b) on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Notice of Removal, at ¶ 5. After removing, Defendants filed an answer which alleged various affirmative defenses, including, *inter alia*: (1) the complaint fails to state a cause of action; (2) Plaintiff breached the Settlement Agreement by disclosing its terms and existence without first obtaining the prior written approval of Defendants; (3) Plaintiff's claims are barred by the doctrines of waiver, estoppel, and/or clean hands; (4) all claims of the '434 Patent are invalid under 35 U.S.C. § 101 because Plaintiff did not invent or discover any new and useful process or machine, or any new and useful improvements thereof; (5) all claims of the '434 Patent are invalid under 35 U.S.C. § 102 because, *inter alia*, Plaintiff is not the first inventor of the subject matter of the '434 Patent and the invention was known or used by others before Plaintiff's alleged invention; (5) the '434 Patent is invalid under 35 U.S.C. § 103 because the

3

differences between its subject matter and prior art are obvious to a person having ordinary skill; (6) Plaintiff failed to disclose material information that would have prevented issuance of the '434 Patent, rendering the patent unenforceable; and (7) estoppel. Negrin Decl., Ex. V. Defendants also counterclaimed for a declaration of unenforceability and invalidity of the '434 Patent. *Id.*

Presently before the Court is Defendants' motion for summary judgment to dismiss this action based on patent invalidity and non–infringement of the '434 Patent. Specifically, Defendants argue that there can be no breach of the Settlement Agreement because (1) Claims 1, 5, 6, and 10 of the '434 Patent are invalid as obvious in light of prior art and for failure to meet the written description requirement, and (2) there can be no infringement because Defendants' SA340 smoke detector model does not contain the limitations of Claims 1, 5, 6, and 10 of the '434 Patent. As a result, Defendants argue that the SA340 smoke detector model is not covered by the Settlement Agreement.

The Claims at issue in this instant motion (Claims 1, 5, 6, and 10) read as follow:

| Claim 1 of the '434 Patent provides:[1] | Claim 5 of the '434 Patent provides: |
|---|---|
| A smoke detector of the type powered by a battery, said smoke detector having means for triggering an alarm in response to a concentration of smoke above a threshold value, said smoke detector having means for triggering an alarm when the battery voltage falls below a threshold voltage, said battery having a service life within said smoke detector of at least one year, wherein the improvement comprises:<br><br>a) a lithium anode primary battery powering said smoke detector; and | The smoke detector of claim 1 further comprising a case, said case having an inside and an outside, said case having openings therein communicating between said inside and said outside to allow the entry of smoke from said outside to said inside, said electronic circuit and said battery contained within said case, said battery having a service life within said smoke detector of at least ten years, said case unopenable to deter physical access to said battery. CMF at ¶ 13; *see also* Negrin Decl., Ex. A. |

---

[1] Because Claim 5 references Claim 1, all of the limitations of Claim 1 are incorporated into Claim 5. CMF at ¶ 13.

| | |
|---|---|
| b) means for providing a periodic pulse current to said battery, the magnitude of said pulse current falling within the range of zero to about 11 mA. CMF at ¶ 15; *see also* Negrin Decl., Ex. A. | |

| **Claim 6 of the '434 Patent provides:**[2] | **Claim 10 of the '434 Patent provides:** |
|---|---|
| A smoke detector comprising:<br><br>(a) an electronic circuit, said electronic circuit having means for triggering an alarm in response to a concentration of smoke above a threshold value, said electronic circuit having means for triggering an alarm in response to its supply voltage falling below a threshold voltage, said threshold voltage having a range of about 7.0 volts to about 5.6 volts; and<br><br>(b) a battery, said battery providing said supply voltage to said electronic circuit, said battery comprising a series connection of two $Li/SOCl_2$ primary cells, said battery having a capacity of about 2 amp hours; and<br><br>(c) means for providing a periodic pulse current to said battery, the magnitude of said pulse current falling within the range of zero to about 5 mA. CMF at ¶ 21; *see also* Negrin Decl., Ex. A. | The smoke detector of claim 6 further comprising a case and smoke detection means, said case having an inside and outside, said case having openings therein communicating between said inside and said outside to allow the entry of smoke from said outside to said inside, said electronic circuit and said battery and said smoke detection means contained within said case, said battery having a service life within said smoke detector of at least ten years, said case unopenable to deter physical access to said battery. CMF at ¶ 19; *see also* Negrin Decl., Ex. A. |

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories,

admissions, and affidavits demonstrate that there are no genuine issues of material fact in

dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56;

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine issue of material fact exists

---

[2] Because Claim 10 references Claim 6, all of the limitations of Claim 6 are incorporated into Claim 10. CMF at ¶ 19.

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a motion for summary judgment,"[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). Once the movant has demonstrated that no genuine issue of material fact exists, then "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). The non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

Ordinarily, the complaint of a *pro se* plaintiff must be liberally construed and held to a less rigorous standard of review than pleadings drafted by an attorney. *Serby*, 2011 WL 4464494, at *3 (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). However, this Court has already determined that because "[P]laintiff is an experienced attorney licensed to practice in this Court, as well as the Southern District of New York, the District of New Jersey, the District of Connecticut, the Court of Appeals for the Federal Circuit, and the Second Circuit Court of Appeals[,]" he is not entitled to such special consideration. *Id.* (internal citations omitted).

## ANALYSIS

### I. *Res Judicata and Collateral Estoppel*

We turn first to the question of whether *res judicata* and/or collateral estoppel bars Defendants from attacking the validity and enforceability of the '434 Patent because if either

does, there is no need to determine the issues of validity and non-infringement. Plaintiff argues that Defendants are barred from relitigating many of the defenses and counterclaims regarding patent invalidity and unenforceability because "the same patent and affirmative defenses and counterclaims presented in the instant litigation were at issue in the [1995 Action], and there were identical parties." Dkt. 67 ("Opp. Br.") at 1 (emphasis in the original). Plaintiff's position is incorrect as this issue has previously been resolved by the Court.

In June 2012, Plaintiff filed a motion for summary judgment to strike Defendants' counterclaims and affirmative defenses claiming that such counterclaims and defenses were barred by *res judicata*, collateral estoppel, and contractual estoppel because they were litigated in the 1995 Action when that action concluded with a Rule 41 dismissal. Dkt. 43-45. On March 28, 2013, this Court denied Plaintiff's motion in its entirety and held that "Defendants' affirmative defenses and counterclaims are not barred by *res judicata*, collateral estoppel, or contractual estoppel." Dkt. 46.

To briefly summarize, with respect to *res judicata*, this Court found the doctrine inappropriate at the summary judgment phase because there was a genuine issue of material fact as to whether the same claim was litigated in the 1995 Action as this current action. Specifically, this Court stated that "there is a genuine issue of material fact whether Defendants' SA340 model smoke alarm is essentially the same as the SA10YR model smoke alarm that was the subject of the 1995 lawsuit." *Serby v. First Alert, Inc.*, 934 F. Supp. 2d 506, 513 (E.D.N.Y. 2013) (Kuntz, J.). This Court also found that collateral estoppel did not apply because "[i]n this case, the 1995 Action ended in a settlement agreement and a Rule 41 dismissal with prejudice. The issues raised in Defendants' affirmative defenses and counterclaims, including the validity of Plaintiff's '434 Patent, were therefore never actually

litigated, nor was there any final judgment on them. Consequently, collateral estoppel does not bar Defendants from relitigating these issues." *Id.* at 514. Lastly, this Court held that contractual estoppel also did not apply because the language of waiver regarding invalidity and non-infringement in the Settlement Agreement was not clear and obvious. *Id.* at 515. As a result, Defendants' instant motion is not barred by either *res judicata*, collateral estoppel, or contractual estoppel.

## II.    *Validity of the '434 Patent*

We next turn to the issue of validity because if the '434 Patent is invalid, this Court need not reach the issue of non-infringement. Defendants attack the validity of the '434 Patent on two grounds. First, Defendants argue that Claims 1, 5, 6, and 10 of the '434 Patent are invalid as obvious in light of prior art. Second, Defendants argue that Claims 1, 5, 6, and 10 of the '434 Patent are invalid for failure to meet the written description requirement set forth in 35 USC § 112. For the reasons set forth below, the Court finds that summary judgment based on invalidity is inappropriate at this stage.

### a.    Invalidity Based on Prior Art.

When considering a motion for summary judgment, the Court must take into consideration the evidentiary standard of proof that pertains to the trial on the merits. "Because patents are presumed valid, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise." *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1340 (Fed. Cir. 2010) (internal quotation and citation omitted). "Clear and convincing evidence is that which gives the finder of fact an abiding conviction that the truth of the proponent's factual contentions is highly probable." *CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 209 (E.D.N.Y. 2009) (Hurley, J.) (internal quotations, citations, and brackets omitted).

A patent is invalid "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. Obviousness is a question of law based on underlying facts. *See TriMed, Inc.*, 608 F.3d at 1341. The relevant factual inquiries, often referred to as the *Graham* factors after *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966), include: "(1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations[.]" *Id.* (citing *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006)). "Additionally, a showing of obviousness requires a motivation or suggestion to combine or modify prior art references, coupled with a reasonable expectation of success." *Medinol Ltd. v. Guidant Corp.*, 412 F. Supp. 2d 301, 313 (S.D.N.Y. 2005) (Scheindlin, J.) (internal citations, quotations, and brackets omitted).

"Summary judgment of obviousness is appropriate if 'the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors.'" *TriMed, Inc.*, 608 F.3d at 1341 (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007)); *see also Plew v. Ltd. Brands, Inc.*, 729 F. Supp. 2d 629, 633-34 (S.D.N.Y. 2010) (Swain, J.) ("In determining a motion for summary judgment of invalidity premised on obviousness, the Court examines whether there is a material dispute as to one of these primary factors that will make a difference in the final determination of obviousness.") (internal citation omitted).

Here, Defendants argue that Claims 1, 5, 6, and 10 of the '434 Patent are invalid as obvious in light of the Sullivan patent, Prior Smoke Detectors, and the Linden Battery Handbook (1984). Additionally, Defendants argue that even if prior art did not teach the subject matter claimed in Claims 1, 5, 6, and 10, its characteristics would have been obvious to try. Based on the record presented to this Court, there are genuine issues of material fact regarding the scope and content of the prior art and the determination of obviousness that preclude summary judgment.

### i. The Scope and Content of the Prior Art

There are genuine issues of material fact regarding the scope of prior art and its relationship to the '434 Patent because Plaintiff and Defendants offer reasonable alternative and conflicting arguments as to the correct interpretation of the prior art. *See Alloc, Inc. v. Norman D. Lifton Co.*, 653 F. Supp. 2d 469, 478 (S.D.N.Y. 2009) (Crotty, J.) ("A court should not grant summary judgment on invalidity where the parties present reasonable alternative arguments as to the correct interpretation of the prior art.") (citing *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679–80 (Fed.Cir.1984)).

### *Sullivan Patent*

Claim 1 of the '434 Patent states a limitation for "means for providing a periodic pulse current to said battery, the magnitude of said pulse current falling within the range of zero to about 11 mA." Claim 6 of the '434 Patent states a limitation for "means for providing a periodic pulse current to said battery, the magnitude of said pulse current falling within the range of zero to about 5 mA."

Defendants argue that these limitations are taught by the Sullivan patent because the Sullivan patent also "expressly teaches the claims 'means for providing a periodic pulse current

to said battery.'" Dkt. 66 ("Defs' Motion for Summary Judgment") at 29. Specifically, Defendants claim that "Claims 4 and 5 of [the] Sullivan [patent] both recite a higher current level that is approximately 10 times the predetermined background current level. The background current in Sullivan is 0.01 mA [], thus making the periodic pulse current 0.1 mA (which is between zero and 11 mA)." *Id.* at 38. As a result, according to Defendants, the Sullivan patent teaches a pulse current falling within the range of zero to about 11 mA – exactly what Claims 1 and 6 of the '434 Patent teach.

On the contrary, Plaintiff argues that the Sullivan patent *teaches away* from Claims 1 and 6 of the '434 Patent. Plaintiff asserts that, "Sullivan *teaches away* from using a reduced test pulse current as claimed in the '434 Patent and in fact contemplates a test pulse current of 150 mA which will cause the lithium anode primary cell to suffer greatly reduced life in a smoke detector application." CMF at ¶ 36 (emphasis in the original). As a result, Plaintiff argues, Sullivan could not teach Claims 1 and 6 because it teaches a test pulse current of 150 mA –a test pulse current outside the range of zero to about 11 mA.

Because there are genuine issues of fact regarding the scope of what the Sullivan patent teaches (*i.e.* does it teach away, does it fall within a test pulse current range of zero to about 11 mA, or does it fall outside that range), summary judgment for invalidity based on prior art in light of the Sullivan patent is inappropriate. *See e.g., Andersen Corp. v. Pella Corp.*, 300 F. App'x 893, 898-99 (Fed. Cir. 2008) (summary judgment inappropriate where parties raised a genuine issue of material fact as to whether the prior art taught away).

### *Prior Smoke Detectors*

Defendants also argue that a test pulse "falling within the range of zero to about 11 mA" was taught by prior smoke detectors examined by Plaintiff and not considered by the

Patent office. Defs' Motion for Summary Judgment at 30. Specifically, Defendants state that "the Family Guard 777, First Alert SA67D, the First Alert 83R, and the First Alert SA301 all pre-date Plaintiff's patent and all had test pulse currents under 11 mA." *Id.* (emphasis in the original).

In contrast, Plaintiff presents evidence that "[p]rior art smoke detectors indiscriminately used test pulse currents ranging from about 8 mA all the way up to about 150 mA. The magnitude of the test pulse current did not appreciably affect battery life when used with carbon zinc and alkaline chemistry batteries. In contrast, all lithium anode primary cells, useful in smoke detector applications form a passivation layer on the lithium anode (some more than others). Without this passivation layer, the self-discharge rate of the cells becomes too great and the battery will not last long enough to be an extended life smoke detector . . . Neither Sullivan nor anybody else . . . realized that the test pulse current must be limited in magnitude to ensure longevity in lithium anode primary cell applications." CMF at ¶ 38. As a result, according to Plaintiff, while prior smoke detectors may have had test pulse currents ranging from 8 mA to 150 mA, a range that considers 11 mA, the prior smoke detectors provide no teachings with respect to how the magnitude of the test pulse current would affect the battery life of lithium anode primary cells as opposed to carbon zinc and alkaline chemistry batteries.

Given these conflicting interpretations, there is a genuine dispute as to the scope and content of what prior smoke detectors teach (*i.e.* do they consider the magnitude of test pulse currents on the battery life of lithium anode primary cells). As a result, summary judgment for invalidity based on prior smoke detectors is inappropriate.

### *Linden Battery Handbook (1984)*

The '434 Patent makes reference to protecting the passivation layer of the lithium thionyl chloride batteries by reducing the pulse current of the smoke detector to match the battery characteristics. CMF at ¶ 24. Defendants argue that this technique was already taught eight years prior to Plaintiff filing his patent application by David Linden's Handbook of Batteries and Fuel Cells. Specifically, Defendants claim that "[a]ccording to the 1984 Handbook of Batteries by David Linden [], at the time the '434 Patent was filed, it was already well known how to eliminate a lithium thinly chloride cell's passivation layer by applying a high pulse current." Defs' Motion for Summary Judgment at 31 (emphasis in the original). Defendants go on to therefore state that "if one wanted not to eliminate the passivation layer, one would not apply a high pulse current." *Id.* (emphasis in the original). Essentially, Defendants' argument is that because Linden taught that a higher pulse current meant eliminating the passivation layer, it would automatically teach the converse that a lower pulse current meant protecting the passivation layer without explicitly stating so.

Based on this characterization of Linden, Defendants have not met their burden on summary judgment to establish by clear and convincing evidence that the '434 Patent is invalid. *See e.g., TriMed, Inc.*, 608 F. 3d at 1340 ("[A] moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise."). It is not sufficient for Defendants to establish clear and convincing evidence by stating that because Linden teaches that a high pulse current equates with the likelihood of eliminating the passivation layer, a low pulse current automatically equates with protecting the passivation layer without stating anything more besides the fact that this is "basic high school physics." Defs' Motion for

Summary Judgment at 32. Moreover, Linden is silent and provides no guidance as to a range of test pulse currents necessary to protect (as opposed to eliminate) the passivation layer. For example, Linden does not teach us anything about an appropriate test pulse current range to protect the passivation layer such that it could be prior art for purposes of the '434 Patent (*i.e.* Linden is silent on whether the appropriate test pulse current range would be zero to 100 mA or zero to 50 mA or even zero to 15 mA to protect the passivation layer). As such, because Defendants have not shown by clear and convincing evidence how Linden teaches that one could preserve the passivation layer by applying a lower pulse current, summary judgment at this stage is inappropriate.

### ii. Obvious to Try

Defendants attempt to circumvent these genuine issues of material fact by suggesting that the claimed subject matter (*i.e.* a test pulse current range of 11 mA) would have been obvious to try. Specifically, Defendants argue that "Plaintiff did not invent a new method of detecting battery voltage levels. He merely took a <u>known</u> method (applying a test pulse current) and applied it at a <u>known</u> level (10 mA or fewer) on a <u>known</u> battery (lithium thionyl chloride cells) to avoid a <u>known</u> problem (removing the lithium thionyl chloride cells' passivation layer." *Id.* at 33 (emphasis in the original). According to Defendants, a person of ordinary skill in the art would not have needed to explore new technologies or vary the parameters because a limited number of solutions would have led to the anticipated success. *Id.* As such, Defendants assert that "[t]his is basic engineering, not invention." *Id.*

As explained in *Perfect Web Technologies, Inc. v. InfoUSA, Inc.,* 587 F.3d 1324, 1329 (Fed. Cir. 2009), an obviousness analysis "may include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require

explication in any reference or expert opinion." However, on summary judgment, "there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re Kahn,* 441 F.3d 977, 988 (Fed. Cir. 2006). Here, Defendants do no more than merely state that the invention is logical. But "[m]erely saying that an invention is a logical, commonsense solution to a known problem does not make it so." *TriMed, Inc.,* 608 F.3d at 1343.

Moreover, as established above, genuine issues of material fact remain as to whether a known method (applying a test pulse current) at a known level (10 mA or fewer) was taught. Therefore, it is not clear why one of ordinary skill in the art at the time of the invention would have "[taken] a <u>known</u> method (applying a test pulse current) and applied it at a <u>known</u> level (10 mA or fewer) on a <u>known</u> battery (lithium thionyl chloride cells) to avoid a <u>known</u> problem (removing the lithium thionyl chloride cells' passivation layer." Defs' Motion for Summary Judgment at 33 (emphasis in the original). As a result, summary judgment on this issue is inappropriate.

### b. Invalidity Based on Failure to Meet Written Description Requirement.

The presumption of patent validity includes a presumption that the patent complies with the written description requirement of 35 U.S.C. § 112(a). *Glaxo Wellcome, Inc. v. Eon Labs Mfg., Inc.,* 00-CV-9089, 2003 WL 22004874, at *2 (S.D.N.Y. Aug. 22, 2003) (McKenna, J.) (citing *N. Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 941 (Fed. Cir. 1990)). "Each case involving the written description requirement of Section 112 must be decided on its own facts." *Id.* (citing *Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1562 (Fed. Cir. 1991)). As such, the written description requirement is a question of fact that is "amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.,* 522 F.3d 1299, 1307 (Fed. Cir. 2008).

The written description requirement of 35 U.S.C. § 112 states in pertinent part:

> "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention."

35 U.S.C. § 112(a).

"[T]he purpose of the written description requirement is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." *Ariad Pharm., Inc. v. Eli Lilly & Co.,* 598 F.3d 1336, 1353 (Fed. Cir. 2010) (internal citations and quotations omitted). "The adequate written description requirement, which is distinct from the enablement and best mode requirements, serves 'to ensure that the inventor had possession, as of the filing date of the application relied on, of the specific subject matter later claimed by him.'" *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996) (quoting *In re Wertheim,* 541 F.2d 257, 262 (C.C.P.A. 1976)).

Under the written description requirement, the patent specification must "'describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.'" *Petito v. Puritan's Pride, Inc.*, 35 F. Supp. 3d 494, 512 (S.D.N.Y. 2014) (Engelmayer, J.) (quoting *Ariad Pharm., Inc.,* 598 F.3d at 1351). A patent applicant complies with the written description requirement of 35 U.S.C. § 112 "'by describing the invention, with all its claimed limitations, not that which makes it obvious,' and by using 'such descriptive means as words, structures, figures, diagrams, formulas, etc., that set forth the claimed invention.'" *Glaxo Wellcome, Inc.*, 2003 WL 22004874, at *2 (citing *Regents of the Univ. of Cal. v. Eli Lilly,* 119 F.3d 1559, 1566 (Fed.Cir.1997) (quoting *Lockwood v. Am. Airlines, Inc.,*

107 F.3d 1565, 1572 (Fed.Cir.1997)). Broad and generic descriptions of an invention's boundaries are not sufficient to satisfy the written description requirement. *Petito*, 35 F. Supp. 3d at 512.

Here, Defendants argue that the '434 Patent is invalid for failure to meet the written description requirement of 35 U.S.C. § 112 because it fails to make a complete disclosure of the invention "of said pulse current falling within the range of zero to about 11 mA" as recited in Claim 1. Defs' Motion for Summary Judgment at 41. Defendants claim that because this upper limit on test pulse current of 11 mA was nowhere mentioned in the originally filed specification, nor in the first two amendments filed by Plaintiff with the United States Patent and Trademark Office, Claim 1 clearly fails the written description requirement. *See id.* at 41-42. According to Defendants, it was not until Plaintiff's final amendment of January 1995 did Plaintiff mention an 11 mA test pulse current upper limit. CMF at ¶ 18.

After reviewing the evidence in the record, the Court concludes that Defendants have not met their burden to establish by clear and convincing evidence invalidity based on insufficient written description such that summary judgment would be appropriate. *See Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1359 (Fed. Cir. 1998) (stating that the party challenging validity must prove invalidity by clear and convincing evidence). While it is true that the originally filed specification makes no mention of the 11 mA test pulse current upper limit, "[d]etermining whether the written description requirement has been met involves examining what an ordinarily skilled artisan would have known at the time the patent was filed." *Scanner Technologies Corp. v. Icos Vision Sys. Corp., N.V.*, 253 F. Supp. 2d 624, 633 (S.D.N.Y. 2003) (Chin, J.), *adhered to on reconsideration*, No. 00 CIV. 4992, 2003 WL 1961565 (S.D.N.Y. Apr. 28, 2003).

Here, Defendants have not set forth any evidence to establish "what an ordinarily skilled artisan would have known at the time the patent was filed." *Id.* Specifically, Defendants have not established whether or not one skilled in the art could "conclude that the inventor invented the claimed invention as of the filing date sought." *In re Alonso*, 545 F.3d 1015, 1019 (Fed. Cir. 2008) (internal citations and quotations omitted). For example, there is nothing in the record to suggest that an ordinarily skilled artisan would be unable to conclude that the specification would cover an upper limit of 11 mA for the test pulse current.

In any event, summary judgment is also inappropriate because a reasonable trier of fact could conclude that the specification contains sufficient language to satisfy the written description requirement. The specification states "[t]he improvement [of the invention] in its basic form comprises a lithium anode primary cell or a series connection of lithium anode primary cells to power the smoke detector. The low battery alarm voltage threshold set-point and the magnitude of the battery test current pulse is adjusted to optimize battery capacity utilization. The improvement is also a new use of lithium anode primary cells to power smoke detectors." Negrin Decl., Ex. F at D000117. The specification goes on to state "[i]n a typical AA cell having about 14 square centimeters of anode area, the low battery test pulse current should be under about 5mA and preferably under about 1mA to prevent excessive self discharge. In cells having the same chemistry, the magnitude of the low battery test pulse current should be proportional to the anode area of the cell to maintain the same anode current density. Large capacity cells having larger anode areas such as a C size will require proportionally more test pulse current with respect to anode area to have the same voltage drop characteristics." *Id.* at D000121. Based on this description, a reasonable trier of fact could conclude that because the specification conveys that the current must be scaled to the anode

area of the battery and recognizes that large capacity cells, such as a C size, will require more test pulse than a typical AA, lithium anode primary batteries powering the invention could fall within a range of less than 1mA to greater than 5mA. *See e.g., Glaxo Wellcome, Inc.*, 2003 WL 22004874, at *2 ( "[E]very species in a genus need not be described in order that a genus meet the written description requirement. . . . In claims involving chemical materials, generic formulae usually indicate with specificity what the generic claims encompass. . . . Mention of representative compounds encompassed by generic claim language clearly is not required by § 112 or any other provision of the statute. . . . In fact, the Federal Circuit has held that claimed subject matter need not be described *in haec verba* in the specification for that specification to satisfy the description requirement.") (internal quotations and citations omitted).

For the reasons stated above, summary judgment based on invalidity for failure to meet the written description requirement is inappropriate.

### III. *Non-Infringement of the '434 Patent*

We turn next to whether the SA340 smoke detector model infringes upon Claims 1, 5, 6, and 10 of the '434 Patent because if it does not, then Defendants are not obligated to pay Plaintiff royalties under the Settlement Agreement.

Infringement can be found in two ways. There can be literal infringement or there can be infringement under the doctrine of equivalents. "A device literally infringes a patent, when it embodies every limitation of the asserted claims. . . . Literal infringement of a claim exists when each of the claim limitations reads on, or in other words is found in, the accused device." *British Telecomms. PLC v. Prodigy Commc'ns Corp.*, 217 F. Supp. 2d 399, 402 (S.D.N.Y. 2002) (McMahon, J.) (internal citations and quotations omitted). Under the doctrine of equivalents, infringement can be found "when there are insubstantial differences between the

claimed invention and the accused product. If an allegedly infringing device performs substantially the same function as the patented invention, in substantially the same way, to yield substantially the same result, it may infringe under the doctrine of equivalents." *Id.* at 402-03 (citations omitted). Regardless of "[w]hether infringement is established literally or under the doctrine of equivalents, every element, or its substantial equivalent, set forth in claim must be found in the product in question." *Id.* at 403 (citing *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 935 (Fed. Cir. 1987)).

A two-step process is required to determine whether a device infringes another's patent. "First, the Court construes the claims to determine their scope and meaning." *Id.* at 402. This first step is commonly known as claim construction. Second, the Court must "compare the allegedly infringing device against the claims as construed to determine whether the device embodies every limitation of the claims." *Id.* (citing *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc)).

To engage in a claim construction analysis, "[the Court] considers three sources: the claims, the written description, and the prosecution history." *Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1309 (Fed. Cir. 1999) (internal citation omitted). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language, because the court's task is to construe the meaning of a disputed term *as [it] is used in the claim.*" *VDP Patent, LLC v. Welch Allyn Holdings, Inc.,* 623 F. Supp. 2d 364, 369 (S.D.N.Y. 2007) (Lynch, J.) (internal citation and quotations omitted; emphasis in original). Courts may also consider extrinsic evidence such as expert and inventor testimony, but "[s]uch extrinsic evidence is less significant than the intrinsic record in determining the legally operative meaning of claim language. . . . Indeed, where an analysis of the intrinsic evidence

alone will resolve any ambiguity in a disputed claim term, it is not merely inadvisable but also improper to rely on extrinsic evidence. *Id.* (internal citations and quotations omitted). As such, "[a] claim term should be afforded its ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention reading the patent. . . . The question is not the inventor's private or subjective intention, but the meaning that would be given his words by a person skilled in the art in the context of the patent." *Id.* at 369-70 (internal citations and quotations omitted).

"'Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents.'" *U.S. Philips Corp. v. Iwasaki Electric Co. Ltd.*, 505 F.3d 1371, 1374-75 (Fed. Cir. 2007) (quoting *PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359, 1364 (Fed. Cir. 2005)).

Here, Defendants argue that the SA340 smoke detector model does not infringe Claims 1, 5, 6, and 10 of the '434 Patent because certain limitations within those claims are absent from the SA340 thereby precluding a finding of infringement. Specifically, Defendants argue that the SA340 smoke detector model does not infringe Claim 1 of the '434 Patent because the limitation of a "lithium anode primary battery powering said smoke detector" is missing from the SA340 smoke detector model. Defs' Motion for Summary Judgment at 48. Because all of the limitations of Claim 1 are incorporated into Claim 5, Defendants argue that if the SA340 smoke detector model does not infringe upon independent Claim 1, it cannot infringe upon dependent Claim 5. CMF at ¶ 13. Defendants also argue that the SA340 smoke detector model does not infringe Claim 6 of the '434 Patent because the following limitations are missing from the SA340 smoke detector model: 1) a "battery comprising a series connection of

two [lithium thionyl chloride] primary cells," and 2) a "pulse current falling within the range of zero to about 5 mA." Defs' Motion for Summary Judgment at 49. Because all of the limitations of Claim 6 are incorporated into Claim 10, Defendants argue that if the SA340 smoke detector model does not infringe upon independent Claim 6, it cannot infringe upon dependent Claim 10. CMF at ¶ 19.

### a. Step 1: Claim Construction

Our first step is to determine the scope and meaning of Claims 1, 5, 6, and 10 of the '434 Patent.

### i. Claim Construction Analysis for Claims 1 and 5

Claim 1 contains the following limitation: "a lithium anode primary battery powering said smoke detector." Defs' Motion for Summary Judgment at 48. Defendants argue that a "lithium anode primary battery powering said smoke detector," necessarily means "a lithium thionyl chloride primary battery." *Id.* at 47 (emphasis in original). Because the SA340 smoke detector model uses lithium manganese dioxide batteries instead of lithium thionyl chloride batteries, the SA340 smoke detector model cannot infringe Claims 1 and 5 of the '434 Patent. *Id.* Plaintiff argues that the '434 Patent's interpretation of "a lithium anode primary battery" is not limited to "lithium thionyl chloride batteries." CMF ¶ 23. To determine the scope and meaning of "a lithium anode primary battery powering said smoke detector," we must start with the claim language itself. *See Pitney Bowes, Inc.*, 182 F.3d at 1305 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

Here, the claim language is unambiguously clear that it is not limited to "a lithium anode primary battery" that is comprised of a "lithium thionyl chloride battery" as Defendants suggest. The claim language makes absolutely no reference to a specific lithium anode

chemistry or to a specific lithium anode battery. Even Defendants concede that Claim 1 "could cover a lithium battery of any chemistry." Defs' Motion for Summary Judgment at 47. Accordingly, the language in Claim 1 strongly militates towards construing the claim term "a lithium anode primary battery powering said smoke detector" to refer to "a lithium anode primary battery" that could cover a lithium battery of any chemistry. Because the claim language itself is sufficiently clear and unambiguous to ascertain the scope and meaning of Claim 1, we need not look any further. *See, e.g., Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005) ("'When the claim language itself lacks sufficient clarity to ascertain the scope of the claims,' we look to the written description for guidance.") (quoting *Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1322 (Fed. Cir. 2003)); *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1014 (Fed. Cir. 2006).

In any event, the written description also supports this reading as it clearly contemplates that "a lithium anode primary battery" would cover a lithium battery of any chemistry as opposed to just a "lithium thionyl chloride battery." While the written description does make reference to "lithium thionyl chloride batteries," it also takes into consideration that other lithium anode chemistries will work with the invention by stating "[o]ther embodiments exist where different lithium anode chemistry cells such as $Li/(CF)_n$ power the smoke detector." Negrin Decl., Ex. A at Col. 6, lines 7-9 (U.S. Patent No. 5,444,434).

Defendants attempt to argue that the prosecution history supports their construction that a "lithium anode primary battery powering said smoke detector" means "a lithium thionyl chloride primary battery," by stating that "all of Plaintiff's arguments for patentability in the prosecution history refer either to thionyl chloride expressly or to protecting passivation layer,

which is present in thionyl chloride batteries." Defs' Motion for Summary Judgment at 47.

However, Defendants' argument misses the mark. While prosecution history may establish

that the patentee intended to deviate from a term's ordinary meaning, there must be a clear and

unmistakable disavowal during prosecution. *See Omega Eng'g, Inc., v. Raytek Corp.*, 334 F.3d

1314, 1325-26 (Fed. Cir. 2003) ("[F]or prosecution disclaimer to attach, our precedent requires

that the alleged disavowing actions or statements made during prosecution be both clear and

unmistakable."); *see also Revlon Consumer Prods. Corp. v. The Estee Lauder Cos., Inc.*, 00-

CV-5960, 2003 WL 21751833, at *11 (S.D.N.Y. July 30, 2003) (Peck, Mag. J.) ("[T]he

prosecution history may demonstrate that the patentee intended to deviate from a term's

ordinary and accustomed meaning, i.e., if it shows the applicant characterized the invention

using words or expressions of manifest exclusion or restriction during the administrative

proceedings before the Patent and Trademark Office.") (internal quotation marks and citations

omitted). Here, there is no evidence that Plaintiff clearly and unmistakably disclaimed that

"lithium anode primary battery powering said smoke detector" encompasses "a lithium thionyl

chloride primary battery." Therefore, the Court construes "a lithium anode primary battery

powering said smoke detector" to encompass a lithium battery of any chemistry.

### ii. Claim Construction Analysis for Claims 6 and 10

Claim 6 contains the following limitations: (1) a "battery comprising a series

connection of two [lithium thionyl chloride] primary cells," and (2) a "pulse current falling

within the range of zero to about 5 mA." Defs' Motion for Summary Judgment at 49. With

respect to the first limitation, Defendants argue that a "battery comprising a series connection

of two [lithium thionyl chloride] primary cells," necessarily means "lithium thionyl chloride []

liquid cathode cells." *Id.* Because the SA340 smoke detector model uses "lithium manganese

dioxide batteries" instead of "lithium thionyl chloride cells," the SA340 smoke detector model cannot infringe Claims 6 and 10 of the '434 Patent. *Id.* (emphasis omitted). Plaintiff does not dispute this construction, but simply references this Court to the fact that "lithium manganese dioxide cells are known to be equivalents of [lithium thionyl chloride] cells. The Model SA10YR upon which about 10 years of royalties were paid to [Plaintiff] by the [D]efendants, is powered by 3 lithium manganese dioxide batteries in series as is the model SA340." CMF ¶ 23.

Here, the claim language is unambiguously clear that it is limited to lithium thionyl chloride liquid cathode cells. Unlike Claim 1, which stated in general "a lithium anode primary battery," Claim 6 unequivocally specifies a specific type of lithium anode battery by stating a "battery comprising a series connection of two [lithium thionyl chloride] primary cells."

Moreover, although the written description takes into consideration other lithium anode chemistries, the resulting Claim 6 only takes into consideration one type: "[lithium thionyl chloride] primary cells." Therefore, this Court construes a "battery comprising a series connection of two [lithium thionyl chloride] primary cells," to only cover inventions subject to "lithium thionyl chloride cells." *See, e.g.*, *Chimie*, 402 F.3d at 1377.

With respect to the second limitation of a "pulse current falling within the range of zero to about 5 mA," the claim language is unambiguously clear that this means the claimed range must be between zero to about 5 mA. *See, e.g.*, *id.* Moreover, the parties do not dispute this construction in their respective briefs. The parties only dispute whether the SA340 smoke detector model falls within the range of zero to about 5 mA for purposes of infringement.

CMF ¶ 37. As a result, this Court construes "pulse current falling within the range of zero to about 5 mA," to encompass a claimed range between zero to about 5 mA.

### b. Step 2: Infringement Application to the SA340 Smoke Detector Model

Now that the Court has construed the claims at issue, it turns next to whether the SA340 smoke detector model infringes against Claims 1, 5, 6, and 10 of the '434 Patent as construed.

### i. Application of Claims 1 and 5 to the SA340 Smoke Detector Model

Defendants contend that the SA340 smoke detector model cannot literally infringe Claim 1 of the '434 Patent because the SA340 smoke detector model "uses lithium manganese dioxide batteries" instead of lithium thionyl chloride. Defs' Motion for Summary Judgment at 48 (emphasis omitted). Specifically, Defendants argue that "[a]lthough Claim 1 appears on its face to recite 'a lithium anode primary battery' that could cover a lithium battery of any chemistry, the proper interpretation of this claim limitation necessarily means 'a lithium thionyl chloride primary battery.'" Id. at 47 (emphasis in the original). Based on this, Defendants' theory of non-infringement rests solely on this Court adopting Defendants' proposed construction of Claim 1's limitation of "a lithium anode primary battery" as encompassing only a "lithium thionyl chloride battery." However, as set forth above, the Court has determined that Defendants' interpretation of the language in Claim 1 is incorrect.

Without providing the Court with any additional evidence, Defendants, as the moving party, have not satisfied their burden of proof by demonstrating an absence of all genuine issues of material fact. Nor have Defendants shown an absence of evidence to support Plaintiff's case as the nonmoving party with respect to whether or not the SA340 smoke detector model infringes Claim 1 of the '434 Patent. See, e.g., Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994) ("The moving party bears the burden of demonstrating the

26

absence of genuine issues of material fact. . . . The moving party, however, need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the district court that there is an absence of evidence to support the nonmoving party's case.") (internal citations omitted). Based on the foregoing and without anything more, Defendants are not entitled to a finding that the SA340 smoke detector model does not literally infringe Claim 1 of the '434 Patent. Since Claim 5 is dependent upon Claim 1 and contains all the limitations of Claim 1, the same is true with respect to Claim 5 of the '434 Patent. *See, e.g.*, *Novo Nordisk A/S v. Becton Dickinson & Co.*, 96 F. Supp. 2d 309, 313 (S.D.N.Y. 2000) (Jones, J.), *aff'd*, 304 F.3d 1216 (Fed. Cir. 2002).[3]

### ii. Application of Claims 6 and 10 to the SA340 Smoke Detector Model

Defendants also contend that the SA340 smoke detector model cannot literally infringe Claim 6 of the '434 Patent because Claim 6 requires a "battery comprising a series connection of two [lithium thionyl chloride] primary cells." Defs' Motion for Summary Judgment at 49. Defendants argue that the SA340 smoke detector model does not contain this limitation because the SA340 smoke detector model "uses lithium manganese dioxide [] solid cathode cells, not lithium thionyl chloride [] liquid cathode cells." *Id.* (emphasis omitted). To substantiate their argument, Defendants rely on the Declaration of Thomas B. Reddy, Ph.D., who states that the SA340 smoke detector model uses the typical lithium/manganese dioxide cell. Decl. of Thomas B. Reddy, Ph.D., at ¶ 5.

Plaintiff attempts to circumvent the issue by arguing that the Declaration of Thomas B. Reddy, Ph.D., should be excluded from evidence because "[t]here is no disclosure, whatsoever

---

[3] Defendants have not argued for summary judgment for non-infringement of Claims 1 and 5 under the doctrine of equivalents. As a result, the Court makes no finding as to whether or not summary judgment for non-infringement is or is not appropriate under the doctrine of equivalents with respect to Claims 1 and 5 of the '434 Patent.

of Thomas B. Reddy, Ph.D.[,] as an expert, under FRCP Rule 26 or otherwise and there is no expert report. As such, his declaration is not admissible evidence, and any part of the summary judgment motion based upon his declaration must fail." Opp. Brief at 5.

For purposes of summary judgment, the Court will not preclude the Declaration of Thomas B. Reddy, Ph. D., for various reasons. *See* Fed. R. Civ. P. 26(a)(2)(D). First, the time for expert disclosures has yet to be determined by the Court. There has been no Court order requiring disclosures and trial is not scheduled to begin until July 27, 2015. *Id.* Second, there is nothing in the record to suggest that Plaintiff would suffer any prejudice if the Declaration of Thomas B. Reddy, Ph. D., was not excluded nor has Plaintiff "pointed to any prejudice that [he] suffered as a result of the [inclusion of Dr. Reddy's declaration]." *Lore v. City of Syracuse*, 00-CV-1833, 2005 WL 3095506, at *4 (N.D.N.Y. Nov. 17, 2005) (Munson, J.). Plaintiff was aware of Dr. Reddy's involvement in this action months before Defendants filed their motion for summary judgment, and therefore had ample time to rebut Dr. Reddy's testimony. *See* Reply Br. at 6. Therefore, the Declaration of Thomas B. Reddy, Ph. D., will not be excluded at this stage.

Plaintiff has also failed to provide this Court with any evidence of literal infringement. Plaintiff states nothing about whether the SA340 smoke detector model literally infringes Claim 6 of the '434 Patent as construed by the Court. Instead, Plaintiff only states that "lithium manganese dioxide cells *are known to be equivalents* of other lithium anode chemistry cells including lithium thionyl chloride." CMF at ¶ 26 (emphasis added). Without anything more, this is not sufficient evidence to establish a factual issue of whether literal infringement occurred because "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could

reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. No reasonable fact finder could conclude that Defendants' SA340 smoke detector model literally infringes Claim 6 of the '434 Patent as there is no credible evidence that the SA340 smoke detector model contains the specific limitation of having "said battery comprising a series connection of two [lithium thionyl chloride] primary cells." Therefore, summary judgment based on the finding that the SA340 smoke detector model does not literally infringe Claim 6 of the '434 Patent is appropriate. *See, e.g., Hydraflow v. Enidine Inc.*, 907 F. Supp. 639, 648-49 (W.D.N.Y. 1995) (Skretny, J.) ("An accused infringer is entitled to summary judgment, on the ground of non-infringement, by pointing out that the patentee failed to put forth evidence to support a finding that a limitation of the asserted claim was met by the structure in the accused devices.") (internal citation and quotation marks omitted). Since Claim 10 is dependent upon Claim 6 and contains all the limitations of Claim 6, the same is true with respect to Claim 10 of the '434 Patent.

Defendants also contend that Plaintiff is estopped from raising infringement based on the doctrine of equivalents with respect to Claims 6 and 10 of the '434 Patent because "[e]very single argument made during the prosecution history by Plaintiff was directed to lithium thionyl chloride cells; not one mention of lithium manganese dioxide cells is made." Defs' Motion for Summary Judgment at 46.

This, however, is not the law with respect to estoppel under the doctrine of equivalents. One is estopped from raising the doctrine of equivalents if "a narrowing amendment [is made] to satisfy a requirement of the Patent Act. . . . Such a narrowing amendment creates a presumption that the patentee surrendered the territory between the original claims and the amended claims." *Chimie*, 402 F.3d at 1382; *see also Bai v. L & L Wings, Inc.*, 160 F.3d 1350,

1354 (Fed. Cir. 1998) ("[W]hen deciding whether summary judgment of infringement under the doctrine of equivalents is proper, we may first determine whether prosecution history estoppel applies, *i.e.*, whether an aspect of the originally claimed subject matter was surrendered by the amendment and is thus outside the range of equivalents to which the patentee is entitled.") (emphasis in original) (internal citation omitted).

Here, no narrowing amendment exists or was added during the prosecution to avoid prior art with respect to this limitation. *See Chimie*, 402 F.3d at 1382 (Patentee could not assert infringement based on doctrine of equivalents where patentee acknowledged adding limitation during prosecution to distinguish the claimed invention from the prior art). As a result, Defendants cannot argue that Plaintiff is estopped from raising infringement based on the doctrine of equivalents with respect to the limitation in Claim 6 of a "battery comprising a series connection of two [lithium thionyl chloride]."

Because Plaintiff is not estopped from raising the doctrine of equivalents with respect to whether the SA340 smoke detector model infringes on Claim 6's limitation of a "battery comprising a series connection of two [lithium thionyl chloride] primary cells," the Court must next determine whether a reasonable fact finder could find equivalence. If not, then summary judgment is appropriate. *See Enzo Biochem, Inc. v. Amersham PLC*, 902 F. Supp. 2d 308, 315 (S.D.N.Y. 2012) (Sullivan, J.).

Defendants argue that no reasonable fact finder could find equivalence between lithium thionyl chloride cells and lithium manganese dioxide cells for two reasons. First, unlike for lithium manganese dioxide cells, there is a need to protect the passivation layer of lithium thionyl chloride cells. Defs' Motion for Summary Judgment at 46. Second, the anode and

cathode of lithium manganese dioxide cells are solid and physically separated by a separator, but lithium thionyl chloride batteries have a liquid cathode. *Id.*

In contrast, Plaintiff has produced sufficient evidence to suggest that a reasonable jury could find that the SA340 smoke detector model "perform[s] substantially the same function in substantially the same way to achieve substantially the same result[,]" as what is claimed in Claim 6 of the '434 Patent. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1321 (Fed. Cir. 1998). For example, Plaintiff has produced evidence to suggest that lithium manganese dioxide cells could be known equivalents of lithium thionyl chloride cells that function in a similar way because "a passivation layer is formed in lithium manganese dioxide chemistry cells, albeit a thinner one than in [t]hionyl chloride cells. If no passivation layer were formed, the cells would have poor shelf life and no voltage delay. [Lithium manganese dioxide] cells do have voltage delay albeit less than thionyl chloride cells. Calorimetric studies have also shown the existence of a passivation layer." CMF at ¶ 57. Plaintiff also presents sworn testimony that "[l]ithium manganese dioxide cells are known to be equivalents of other lithium anode chemistry cells including lithium thionyl chloride. The Model SA10YR upon which about 10 years of royalties were paid to [Plaintiff] by the [D]efendants, is powered by 3 lithium manganese dioxide batteries in series, and [D]efendants recognized them as equivalents." CMF at ¶ 26.

Based on the evidence presented by both Plaintiff and Defendants, a genuine issue of material fact exists as to whether the SA340 smoke detector model infringes Claim 6 of the '434 Patent under the doctrine of equivalents with respect to the limitation of a "battery comprising a series connection of two [lithium thionyl chloride] primary cells." As a result, summary judgment for non-infringement on this limitation based on the doctrine of equivalents

is inappropriate at this stage. Since Claim 10 is dependent upon Claim 6 and contains all the limitations of Claim 6, the same is true with respect to Claim 10 of the '434 Patent.

Defendants also contend that the SA340 smoke detector model cannot literally infringe Claim 6 of the '434 Patent because Claim 6 requires "a periodic pulse current to said battery, the magnitude of said pulse current falling within the range of zero to about 5 mA." Defs' Motion for Summary Judgment at 49. Defendants argue that the SA340 smoke detector model does not contain this limitation because the SA340 smoke detector model "provides a test pulse current to its battery of approximately 7.5 mA, 50% higher than the upper limit of 5 mA, much like many smoke detectors that pre-date the filing of the '434 Patent." Defs' Motion for Summary Judgment at 49 (emphasis in original). Because the Court has already established that one claimed limitation from Claim 6 is missing from the SA340 smoke detector model under the literal infringement analysis, this Court need not address this second limitation that Defendants contend is missing from Claim 6 of the '434 Patent. *See e.g.*, *Bai*, 160 F.3d at 1353 ( "[A] literal infringement issue is properly decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that *every* limitation recited in the properly construed claim either is or is not found in the accused device.") (emphasis added) (internal citation omitted). Since Claim 10 is dependent upon Claim 6 and contains all the limitations of Claim 6, the same is true with respect to Claim 10 of the '434 Patent. However, because the same is not true under the doctrine of equivalents, the Court must still determine whether a reasonable fact finder could find infringement of this limitation under the doctrine of equivalents.

Defendants argue that Plaintiff is estopped from raising infringement based on the doctrine of equivalents because "this 0-5 mA range was absent from [the] originally filed

Claim 5 which eventually [was] issued [as] Claim 6. Plaintiff added this limitation expressly for the purposes of avoiding the Sullivan patent in his final amendment." Defs' Motion for Summary Judgment at 46. Defendants' statement is incorrect. The originally filed Patent Application clearly states that the 0-5 mA range is a limitation of originally filed Claim 5: "The smoke detector of [C]laim 5 [which is now Claim 6] wherein said electronic circuit further comprises means for providing a periodic pulse current to said battery, the magnitude of said pulse current falling within the range of zero to about 5 mA." Negrin Decl., Ex. F at D000127, ¶ 6. Therefore, this 0-5 mA range was not absent from the originally filed Claim 5, which eventually became issued Claim 6. As a result, Plaintiff is not estopped from raising infringement based on the doctrine of equivalents.

Because Defendants have provided no further evidence as to why a reasonable fact finder could not find infringement of this limitation under the doctrine of equivalents, Defendants, as the moving party, have not met their burden of proof by demonstrating either an absence of all genuine issues of material fact or an absence of evidence to support Plaintiff's case as the nonmoving party. *See, e.g., Conroy*, 14 F.3d at 1575. Therefore, summary judgment is inappropriate.

In sum and based on the foregoing, Defendants are entitled to summary judgment that the SA340 smoke detector model does not literally infringe Claim 6 of the '434 Patent. Since Claim 10 is dependent upon Claim 6 and contains all the limitations of Claim 6, the same is true with respect to Claim 10 of the '434 Patent. Defendants, however, are not entitled to summary judgment that the SA340 smoke detector model does not infringe Claim 6 of the '434 Patent under the doctrine of equivalents. Since Claim 10 is dependent upon Claim 6 and

contains all the limitations of Claim 6, the same is true with respect to Claim 10 of the '434 Patent.

IV.    *Conclusion*

For the reasons stated above, Defendants' motion for summary judgment based on invalidity is DENIED. Defendants' motion for summary judgment based on literal non-infringement is DENIED with respect to Claims 1 and 5 of the '434 Patent. Defendants' motion for summary judgment based on literal non-infringement is GRANTED with respect to Claims 6 and 10 of the '434 Patent. Defendants' motion for summary judgment based on the doctrine of equivalents is DENIED with respect to Claims 6 and 10 of the '434 Patent.

**SO ORDERED**

Dated: Brooklyn, New York
  March 3, 2015

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge