UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VICTOR M. SERBY,

                            Plaintiff,             **ORDER**:
                                                   09-CV-4229 (WFK) (VMS)

    -against-

FIRST ALERT, INC. AND BRK BRANDS, INC.

                          Defendants.
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge**

       Victor M. Serby ("Plaintiff"), brought this action in the Supreme Court of the State of New York, Kings County, against First Alert, Inc. ("First Alert") and its subsidiary BRK Brands, Inc. ("BRK") (collectively "Defendants"), which then removed the case to this Court. Plaintiff alleges Defendants manufacture, distribute, and sell various smoke detectors without payment of royalties to Plaintiff, in breach of a pre-existing settlement agreement from a prior, related, patent infringement litigation. Plaintiff seeks recovery on two causes of action: (1) breach of contract and (2) for an accounting to determine the precise amount of damages. Defendants counterclaimed on the following grounds: (1) for a declaration of patent unenforceability and (2) for a declaration of patent invalidity.

       This Court conducted a bench trial in accordance with 28 U.S.C. § 1330(a) beginning on July 27, 2015 and ending on July 30, 2015. Having reviewed the testimony and exhibits, as well as the parties' post-trial submissions, this Court, pursuant to Rule 52 of the Federal Rules of Civil Procedure, issues the following Findings of Fact and Conclusions of Law. "To the extent that any of the findings of fact may be deemed conclusions of law, they also shall be considered

1

conclusions. Likewise, to the extent that any of the conclusions of law may be deemed findings of fact, they shall be considered findings." *Giordano v. Thomson*, No. 03-CV-5672, 2007 WL 1580081, at *1 (E.D.N.Y. May 29, 2007) (Seybert, J.) (citation omitted). For the reasons set forth below, this Court finds Defendants not liable on each of Plaintiff's causes of action. This Court further finds Plaintiff's patent is enforceable and valid.

## ANALYSIS

### I. Findings of Fact - Plaintiff's Claims

In 1995, Plaintiff commenced a lawsuit against Defendants claiming Defendants' sale of its SA10YR model smoke alarm infringed Plaintiff's United States Patent Number 5,444,434 ("the '434 Patent"), entitled "Extended Life Smoke Detector." Trial Transcript ("Tr.") 157:9-10, 244:24-245:9; Ex. 1[1] ("'434 Patent").

The SA10YR smoke detector model had batteries intended to last for ten years. Tr. at 245:22-24. It was constructed with a cover snapped to a base that was unopenable without the use of tools and sealed to prevent the consumer from accessing or replacing parts inside the smoke alarm, including batteries. *Id.* at 246:11-247:4, 289:8-12.

In April 1997, Plaintiff and Defendants entered into a Settlement, License, and Mutual Release Agreement (the "Settlement Agreement"), whereby the parties agreed to settle the lawsuit. Ex. 2 ("Settlement Agreement"). Under the Settlement Agreement, the parties agreed:

> [Defendants] agree to pay [Plaintiff] a 5% royalty, semi-annually, based on the net sales of smoke detectors which incorporate a lithium battery, meet all other limitations of Claims 5 or 10 of [the '434 Patent] and which have a battery compartment that is unopenable as defined in Claims 5 or 10 of [the '434 Patent] and which are made, used or sold by [Defendants] in the United States for the time period during which Claims 5 or 10 of [the '434 Patent] remain valid and enforceable . . . [Defendants] can make, have made, use, offer for sale, sell, import and export royalty free (i) lithium batteries for use in smoke detectors, and

---

[1] Exhibits referenced herein refer to the parties' Trial Exhibits unless otherwise noted.

2

>      (ii) smoke detectors which have battery compartments that are openable and can
>      be used with lithium batteries.

*Id.* at ¶ 4.

Defendants paid Plaintiff royalties under the Settlement Agreement for all sales of the SA10YR smoke alarm model in the amount of about one million and five hundred thousand dollars ($1,500,000). Tr.160:15-21, 161:1-14, 249:18-24, 253:7-9. Plaintiff admits all royalties were paid as required under the Settlement Agreement for the SA10YR smoke alarm model. *Id.* at 223:4-7. The '434 Patent was valid for seventeen years, and expired on August 22, 2012, after which no royalties would have been due under the Settlement Agreement on any sales or any smoke alarms by Defendants. *Id.* at 174:1-8, 176:2-7.

Defendants ceased the production and sale of the SA10YR smoke detector in response to changed industry standards and replaced the SA10YR model with the SA340 smoke detector model. *Id.* at 250:8-251:23, 298:3-6. Defendants did not pay Plaintiff royalties under the Settlement Agreement for sales of the SA340 model. *Id.* at 253:10-17. According to Defendants, Plaintiff was not entitled to any royalty payments under the Settlement Agreement for sales of the SA340 model because it had an openable battery compartment. *Id.*

## II. Conclusions of Law - Plaintiff's Claims for Breach of Contract and Accounting

Plaintiff argues Defendants' breached the Settlement Agreement because the SA340 smoke detector model falls within the terms of the settlement agreement thereby triggering the payment of royalties. Dkt. 97 ("P's Post-Trial Br.") at Conclusions of Law at ¶ 27. Specifically, Plaintiff claims royalty payments are due under the Settlement Agreement because the SA340 smoke detector model, like the SA10YR smoke detector model, is "unopenable within the meaning to the expectation of consumers and end users." *Id.* at ¶ 24. New York law governs the analysis for Plaintiff's causes of action. *See* Settlement Agreement at ¶ 12.

Under New York law, "to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence[:] (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (citations omitted).

Here, Plaintiff has not met his burden of proof to establish a breach of contract by a preponderance of the evidence. Prior to the commencement of the bench trial in this action, this Court construed the term "unopenable" to mean:

> For purposes of the [']434 Patent and Settlement Agreement, therefore, the Court finds that a smoke detector is 'unopenable' when the housing of the smoke detector cannot be opened by a consumer without damaging the structure of the case, as necessary to deter physical access to the battery, *i.e.*, a smoke detector with a housing that, once assembled, will not come apart, so as to deter physical access to the battery.

*Serby v. First Alert, Inc.*, 09-CV-4229, 2011 WL 4464494, at *6 (E.D.N.Y. Sept. 26, 2011) (Mauskopf, J.) (footnote omitted). In rejecting Defendants' motion for summary judgment, however, the Court stated:

> [T]he User's Manual is concrete evidence from which a reasonable jury could find that the housing of the SA340 model does not come apart to the extent necessary to allow access to the battery, thus rendering it 'unopenable.' Moreover, if [P]laintiff's evidence is accurate, the SA340 model would prevent removal or theft of the powercell, serving the purpose for which [P]laintiff designed the [']434 Patent. Therefore, viewing the evidence in the light most favorable to [P]laintiff, there is an issue of fact as to whether the SA340 model is 'unopenable' for purposes of the Settlement Agreement, and summary judgment is denied with respect to whether [D]efendants' manufacture and sale of the SA340 model without payment of royalties is a breach.

*Id.* at *7 (E.D.N.Y. Sept. 26, 2011) (internal citations omitted). The Court emphasized, however, "a smoke detector that could be opened and reassembled to allow repeated access to

the battery, without physical damage to the structure, would not be 'unopenable' under the meaning of the [']434 Patent." *Id.* at *8.

At trial, Plaintiff's only evidence to support his argument that the SA340 smoke detector model is unopenable was his continued reliance on the language in the User's Manual, which does not provide any directions on how to open the cover or access any battery enclosure of the SA340 smoke detector model, and his reliance on the packaging, which states the SA340 smoke detector model "has a sealed power cell, that the case is not openable." Tr. 169:20-21; *see also id.* at 285:19-287:8; Ex. 10 (User's Manual). However, at no point during trial or in post-trial submissions did Plaintiff attempt to prove that the SA340 smoke detector model could not be opened and reassembled to allow repeated access to the battery without physical damage to the structure. As such, the evidence set forth by Plaintiff is not sufficient to establish breach of contract by a preponderance of the evidence.

Further, Defendants presented evidence to establish the SA340 smoke detector model can be opened without physical damage. Specifically, that it "could be opened and reassembled to allow repeated access to the battery, without physical damage to the structure," thus rendering it unopenable as construed by the Court. *Serby*, 2011 WL 4464494 at *8. For example, Defendants' witness, Mark Devine, BRK's Senior Vice President of Marketing, demonstrated in court that the SA340 smoke detector model had both an openable housing unit and an openable battery compartment. Tr. 240:1-2; 268:16-270:23.

To make his demonstration, Mr. Devine used a SA340 smoke detector model from 2009 containing a User's Manual. *Id.* at 266:20-267:15; *see also* Ex. 4 ("2009 SA340 Smoke Detector Model"). He first pushed the test button and verified that the smoke alarm was operational. *Id.* at 268:16-269:6. Second, Mr. Devine was able to open the alarm by squeezing the tabs to

5

remove the cover from the base. *Id.* at 269:7-16. Third, Mr. Devine was able to remove the battery compartment from the base of the smoke alarm. *Id.* at 269:19-270: 3. Fourth, Mr. Devine demonstrated that the battery compartment itself was separately openable by removing the cover of the battery compartment. *Id.* at 270:5-14, Tr. 285:11-18. Opening the battery compartment exposed the batteries which are permanently attached to a circuit board. *Id.* at 270:16-23. Mr. Devine opened the housing of the SA340 smoke detector model and the battery compartment by only using his fingers. He did not need to use any tools and he was able to open the housing and the battery compartment without damaging the structure of the case. *Id.* at 270:24-271:13, 290:17-23, 291:13-17. Finally, Mr. Devine was able to reassume the SA340 smoke alarm model and tested it again to confirm that it was working. *Id.* at 271:14-272:11. Mr. Devine also explained that the language in the User's Manual and the packaging were intended to discourage a consumer from replacing the batteries even though the battery compartment could still be opened. Tr. 272:25-273:2, 273:19-274:24, 275:6-14, 320:21-24, 323:14-24, 324:10-14. Plaintiff presented no evidence to the contrary.

In addition, Defendants submitted the expert report of Dr. Christine Wood, who also testified at trial. Dkt. 96-3 ("Wood Report"). Dr. Wood's assignment was to determine whether both the housing and battery compartment of the SA340 smoke detector model were openable by consumers. Tr. 486:22-487:2, 18-19. All of the participants in Dr. Wood's study were able to open both the housing and battery compartment of the SA340 smoke detector model within the first five minutes, with their fingers, without the use of tools, and without damaging any component parts. *Id.* at 491:20-492:8. Dr. Wood therefore concluded the housing and battery compartment of the SA340 smoke detector model are each openable by consumers without the use of tools and without damaging components. *Id.* at 495:21-496:7; *see also* Wood Report at 7.

6

Again, Plaintiff did not present any evidence to refute Dr. Wood's conclusion. In post-trial submissions, Plaintiff simply argues that "Dr. Wood's testing was of no probative value." Dkt. 100 ("P's Opp.") at Findings of Fact ¶ 17. The Court, however, need not reach this issue as the burden of proof to establish breach of contract is on Plaintiff and, as explained directly above, Plaintiff has not met his burden of proof.

As the Plaintiff has not met his burden of proof, no cause of action for breach of contract and an accounting thereof exists.[2] Accordingly, the Court finds that Defendants are not liable for (1) breach of contract and (2) for an accounting to determine the precise amount of damages as set forth in Plaintiff's Complaint.

### III. Findings of Fact - Defendants' Counterclaims

On June 15, 1992, Plaintiff filed a patent application, Application Serial No. 07/899,622 ("Patent Application"), for an extended life smoke detector with the United States Patent and Trademark Office ("USPTO"). Stipulated Ex. 5A ("Patent Application").

On June 17, 1993, the USPTO issued the first of several reviews of Plaintiff's Patent Application. Stipulated Ex. 5B (June 1993 Review). In it, the patent examiner rejected Claims 1 and 11 of the Patent Application as unpatentable in light of prior art by Kodak. *Id.* at ¶ 2. The patent examiner also rejected Claims 2, 3, 5, 10, 12, and 13 in light of prior art by Kodak and Moody. *Id.* at ¶¶ 3-4.

In response, Plaintiff submitted an amendment to his Patent Application ("First Amendment"). Stipulated Ex. 5C (First Amendment). In the First Amendment, Plaintiff set forth his reasons as to why Kodak and Moody do not teach the claimed invention in Plaintiff's

---

[2] Because the Court concludes that Plaintiff has not met his burden of proof to establish the SA340 smoke detector model is unopenable for purposes of breaching the Settlement Agreement, the Court need not determine whether the SA340 smoke detector model infringes the '434 Patent.

Patent Application. *Id.* at 2-6. For example, Plaintiff argued Moody does not teach one how to use lithium thionyl chloride batteries to power life-long applications in smoke detectors, and therefore Moody does not render the Patent Application unpatentable. *Id.* at 3-4.

On November 4, 1993, Plaintiff conducted an in-person interview with the patent examiner. Stipulated Ex. 5E ("First Interview"). As part of the interview, Plaintiff and the patent examiner discussed Moody and Kodak as prior art references. *Id.*

On January 4, 1994, Plaintiff submitted a second amendment to his Patent Application whereby Plaintiff added additional language to Claim 1 of the Patent Application to overcome prior art issues. Stipulated Ex. G ("Second Amendment") at 3.

On September 12, 1994, the USPTO issued another review with respect to Plaintiff's Patent Application. Stipulated Ex. H ("September 1994 Review"). In it, the patent examiner rejected Claims 1 and 11 as being anticipated by the Sullivan patent. *Id.* at ¶ 3. The remaining claims were also rejected as obvious in light of a combination of Sullivan, Moody, and Plaintiff's admitted prior art. *Id.* at ¶¶ 4-5.

On November 8, 1994, Plaintiff conducted a second in-person interview with the patent examiner. Stipulated Ex. 5I ("Second Interview"). As part of the interview, Plaintiff and the patent examiner discussed Moody and Sullivan as prior art references. *Id.* The patent examiner and Plaintiff agreed that if Plaintiff were to insert the limitation of a pulse current with a particular magnitude in Claims 1, 5, and 11, it would distinguish Plaintiff's Patent Application from Moody, Sullivan, and Kodak. *Id.*

In response, Plaintiff submitted a third amendment ("Third Amendment"). Stipulated Ex. 5J ("Third Amendment"). Plaintiff cancelled all previous Claims 1-14 of his patent application and substituted Claims 15-24. *Id.* at 1-2. These claims were eventually renumbered by the

8

patent examiner to be Claims 1-10 of the '434 Patent as indicated by the handwriting on Plaintiff's Third Amendment. Tr. 195:15-196:3. In this Third Amendment, Claim 15 of the Patent Application, which is now Claim 1 of the '434 Patent, includes the following limitation: "means for providing a periodic pulse current to said battery, the magnitude of said pulse current falling within the range of zero to about 11 mA." Third Amendment at 1. On August 22, 1995, the USPTO issued the '434 Patent. *See* '434 Patent.

After Plaintiff initiated this action against Defendants, Defendants counterclaimed claiming there could be no breach of the Settlement Agreement because (1) Claims 1, 5, 6, and 10 of the '434 Patent were invalid in light of prior art, (2) Claims 1 and 5 of the '434 Patent were invalid for failure to meet the written description requirement of 35 USC § 112, and (3) the '434 Patent was enforceable because of Plaintiff's inequitable conduct. Dkt. 96 ("Ds' Post-Trial Br.") at Conclusions of Law ¶¶ 9-15.

The Claims at issue (Claims 1, 5, 6, and 10) read as follow:

| **Claim 1 of the '434 Patent provides:**[3] | **Claim 5 of the '434 Patent provides:** |
|---|---|
| A smoke detector of the type powered by a battery, said smoke detector having means for triggering an alarm in response to a concentration of smoke above a threshold value, said smoke detector having means for triggering an alarm when the battery voltage falls below a threshold voltage, said battery having a service life within said smoke detector of at least one year, wherein the improvement comprises:<br><br>a) a lithium anode primary battery powering said smoke detector; and<br><br>b) means for providing a periodic pulse current to said battery, the magnitude of said | The smoke detector of claim 1 further comprising a case, said case having an inside and an outside, said case having openings therein communicating between said inside and said outside to allow the entry of smoke from said outside to said inside, said electronic circuit and said battery contained within said case, said battery having a service life within said smoke detector of at least ten years, said case unopenable to deter physical access to said battery. *See* '434 Patent. |

---

[3] Because Claim 5 is a dependent claim that depends from Claim 1, all of the limitations of Claim 1 are incorporated into Claim 5. *Cf.* Tr. 127:10-12.

9

| | |
|---|---|
| pulse current falling within the range of zero to about 11 mA. *See* '434 Patent. | |

| Claim 6 of the '434 Patent provides:[4] | Claim 10 of the '434 Patent provides: |
|---|---|
| A smoke detector comprising:<br><br>(a) an electronic circuit, said electronic circuit having means for triggering an alarm in response to a concentration of smoke above a threshold value, said electronic circuit having means for triggering an alarm in response to its supply voltage falling below a threshold voltage, said threshold voltage having a range of about 7.0 volts to about 5.6 volts; and<br><br>(b) a battery, said battery providing said supply voltage to said electronic circuit, said battery comprising a series connection of two Li/SOCl₂ primary cells, said battery having a capacity of about 2 amp hours; and<br>(c) means for providing a periodic pulse current to said battery, the magnitude of said pulse current falling within the range of zero to about 5 mA. *See* '434 Patent. | The smoke detector of claim 6 further comprising a case and smoke detection means, said case having an inside and outside, said case having openings therein communicating between said inside and said outside to allow the entry of smoke from said outside to said inside, said electronic circuit and said battery and said smoke detection means contained within said case, said battery having a service life within said smoke detector of at least ten years, said case unopenable to deter physical access to said battery. *See* '434 Patent. |

### IV.  Conclusions of Law: Defendants' Counterclaims

Defendants' counterclaims seek to invalidate the '434 Patent. To do so, Defendants must meet a heavy burden of proof by clear and convincing evidence. "By express Congressional declaration, patents are presumed valid. Each patent claim is independently presumed valid." *Mitsubishi Chem. Corp. v. Barr Labs., Inc.*, 718 F. Supp. 2d 382, 391 (S.D.N.Y. 2010) (Koelt, J.) (citing 35 U.S.C. § 282). "The burden of proving invalidity rests on the patent challenger, who

---

[4] Because Claim 10 is a dependent claim that depends from Claim 6, all of the limitations of Claim 6 are incorporated into Claim 10. Tr. 127:10-12.

must do so by clear and convincing evidence." *Id.* (citations omitted). "Clear and convincing evidence is that which gives the finder of fact an abiding conviction that the truth of the proponent's factual contentions is highly probable." *CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 209 (E.D.N.Y. 2009) (Hurley, J.) (internal quotation marks, citations, and brackets omitted).

### A. Invalidity Based on Prior Art

Defendants first attack Claims 1, 5, 6, and 10 of the '434 Patent as being invalid in light of prior art. Ds' Post-Trial Br. at Conclusions of Law ¶ 9. According to Defendants, Claims 1 and 6 are invalid because they are anticipated by or unpatentable over Sullivan. *Id.* Since Claims 5 and 10 stand and fall with Claims 1 and 6, Defendants argue Claims 5 and 10 are also invalid based on prior art. *Id.* Defendants, however, have failed to meet their burden of proof.

A patent is invalid based on prior art "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. Obviousness is a question of law based on underlying facts. *See TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1341 (Fed. Cir. 2010). The relevant factual inquiries, often referred to as the *Graham* factors after *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966), include: "(1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations[.]" *Id.* (citing *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006)). "Additionally, a showing of obviousness requires a motivation or suggestion to combine or modify prior art references, coupled with a reasonable expectation of success." *Medinol Ltd.*

11

*v. Guidant Corp.*, 412 F. Supp. 2d 301, 313 (S.D.N.Y. 2005) (Scheindlin, J.) (internal citations, quotation marks, and brackets omitted).

Defendants' sole argument for invalidity based on prior art is that "Plaintiff took a known type of battery known for its long life properties and used it in a known type of smoke alarm in a known manner at known test pulse current levels to solve a known problem that he did not discover. The combination was merely a predictable use of prior art elements according to their established functions." Ds' Post-Trial Br. at Conclusions of Law ¶ 9. At trial, Defendants called one expert witnesses to testify to this: Dr. Thomas Reddy. Tr. 366:22, 367:17-18. However, Dr. Reddy's testimony did not establish how the "combination" of the prior art – "a known type of battery" with "a known type of smoke alarm . . . at known test pulse current level[]" – would have been obvious to a person having ordinary skill in the art. Ds' Post-Trial Br. at Conclusions of Law ¶ 9; *see also* 35 U.S.C. § 103.

For example, while Dr. Reddy concluded the '434 Patent was invalid in light of Sullivan and Moody, he failed to explain how the combination would have been obvious, let alone predictable, to a person having ordinary skill in the art. Dr. Reddy summarized his findings on invalidity as follows:

> I think it's invalid. The prior art, the Sullivan patent, teaches the use of a lithium primary battery in a smoke detector in means of detecting the end of the life of that battery.
>
> The Moody patent teaches the use of the lithium thionyl chloride battery in an electronic safety device.
>
> The Serby patent also cites a publicity release from Kodak and Dicon disclosing their intention to market a lithium manganese dioxide 9 cell battery in a smoke detector and in addition to -- well, there's that prior art.

Tr. 384:18-385:2; *see also id.* at 413:14-23. Defendants also attempt to use the testimony of Gene Brooks to establish the same, but his testimony suffers from the same flaws as Dr. Reddy's testimony. *See* Dkt. 97-10 ("Dec. of Gene Brooks") at ¶¶ 9-12.

Simply stating the "[t]he combination was merely a predictable use of prior art elements according to their established functions[,]" without establishing how is not only insufficient, but it falls far from the standard of establishing invalidity based on clear and convincing evidence. Ds' Post-Trial Br. at Conclusions of Law ¶ 9. "Merely saying that an invention is a logical, commonsense solution to a known problem does not make it so." *TriMed, Inc.*, 608 F.3d at 1343. Accordingly, Defendants have not met their burden of proof to invalidate Claims 1, 5, 6, and 10 of the '434 Patent based on prior art. Therefore, the Court finds Claims 1, 5, 6, and 10 of the '434 Patent are not invalid in light of the prior art.

### B. Invalidity Based on Failure to Meet Written Description Requirement

Defendants next attack Claims 1 and 5 of the '434 Patent as being invalid for failing to meet the written description requirement of 35 U.S.C. § 112. Ds' Post-Trial Br. at Conclusions of Law ¶¶ 10-11. Defendants are incorrect.

The presumption of patent validity includes a presumption that the patent complies with the written description requirement of 35 U.S.C. § 112(a). *Glaxo Wellcome, Inc. v. Eon Labs Mfg., Inc.*, 00-CV-9089, 2003 WL 22004874, at *2 (S.D.N.Y. Aug. 22, 2003) (McKenna, J.) (citing *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990)).

The written description requirement of 35 U.S.C. § 112 states in pertinent part:

> "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention."

13

35 U.S.C. § 112(a).

"[T]he purpose of the written description requirement is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353 (Fed. Cir. 2010) (internal citations and quotations omitted). "The adequate written description requirement, which is distinct from the enablement and best mode requirements, serves 'to ensure that the inventor had possession, as of the filing date of the application relied on, of the specific subject matter later claimed by him.'" *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996) (quoting *In re Wertheim*, 541 F.2d 257, 262 (C.C.P.A. 1976)).

Under the written description requirement, the patent specification must "'describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.'" *Petito v. Puritan's Pride, Inc.*, 35 F. Supp. 3d 494, 512 (S.D.N.Y. 2014) (Engelmayer, J.) (quoting *Ariad Pharm., Inc.*, 598 F.3d at 1351). A patent applicant complies with the written description requirement of 35 U.S.C. § 112 "'by describing the invention, with all its claimed limitations, not that which makes it obvious,' and by using 'such descriptive means as words, structures, figures, diagrams, formulas, etc., that set forth the claimed invention.'" *Glaxo Wellcome, Inc.*, 2003 WL 22004874 at *2 (citing *Regents of the Univ. of Cal. v. Eli Lilly*, 119 F.3d 1559, 1566 (Fed. Cir. 1997) (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997)). Broad and generic descriptions of an invention's boundaries are not sufficient to satisfy the written description requirement. *Petito*, 35 F. Supp. 3d at 512.

"Determining whether the written description requirement has been met involves examining what an ordinarily skilled artisan would have known at the time the patent was filed." *Scanner Techs. Corp. v. Icos Vision Sys. Corp., N.V.*, 253 F. Supp. 2d 624, 633 (S.D.N.Y. 2003)

(Chin, J.), *adhered to on reconsideration*, 00-CV-4992, 2003 WL 1961565 (S.D.N.Y. Apr. 28, 2003). [A] court must conduct an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *In re OxyContin Antitrust Litig.*, 994 F. Supp. 2d 367, 382 (S.D.N.Y. 2014) (Stein, J.) (internal quotation marks and citations omitted) The party challenging validity must prove invalidity based on insufficient written description, otherwise known as lack of enablement, by clear and convincing evidence. *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1359 (Fed. Cir. 1998)

Defendants argue Claims 1 and 5 of the '434 Patent are invalid for failing to meet the written description requirement because the 11 milliamp test pulse current limitation of Claim 1 did not appear in any of the materials Plaintiff submitted to the USPTO, such as the Patent Application, until the final amendment submitted by Plaintiff. Ds' Post-Trial Br. at Conclusions of Law ¶ 10; *see also* Third Amendment at 1. Defendants also argue invalidity on the same grounds because "the 11 milliamp test pulse current limitation in Claim 1 is meaningless without any reference to the size of the battery[.]" *Id.* at ¶ 11.

Defendants, however, have not met their burden to establish invalidity based on insufficient written description by clear and convincing evidence. First, Defendants have not set forth any evidence to establish "what an ordinarily skilled artisan would have known at the time the patent was filed." *Scanner Techs. Corp.*, 253 F. Supp. 2d at 633. Specifically, Defendants have not established whether or not one skilled in the art could "conclude that the inventor invented the claimed invention as of the filing date sought." *In re Alonso*, 545 F.3d 1015, 1019 (Fed. Cir. 2008) (internal quotation marks and citations omitted). For example, as to the first issue -- the fact that the 11 milliamp test pulse current limitation of Claim 1 did not appear until the final amendment submitted by Plaintiff -- Defendants have failed to provide any evidence or

testimony that an ordinarily skilled artisan would have been unable to conclude that the specification would cover an upper limit of 11 mA for the test pulse current.

Defendants fail to do the same with respect to the second issue -- the fact that the 11 milliamp test pulse current limitation in Claim 1 is meaningless without any reference to the size of the battery. *See* Ds' Post-Trial Br. at Conclusions of Law ¶ 11. To the contrary, the specification of the '434 Patent details and specifically states a life of twenty-five years can be achieved with C-size cells powering a smoke detector. *See* '434 Patent at col. 3 ln. 58-61.

Because Defendants provide no evidence that the written description is insufficient to be understandable by a person of ordinary skill in the art, the Court finds the '434 Patent is not invalid for failure to meet the written description requirement.

### C. Unenforceability Based on Inequitable Conduct

Lastly, Defendants attack the '434 Patent as unenforceable based on Plaintiff's inequitable conduct. Ds' Post-Trial Br. at Conclusions of Law ¶¶ 12-15. Defendants claim Plaintiff engaged in inequitable conduct based on the following: (1) "[t]he '434 Patent issued solely as a result of Plaintiff amending the claims to limit the magnitude of the test pulse current; as a result, prior commercially available smoke alarms that had test pulse currents that already fell within the limited claimed test pulse current ranges were clearly material to patentability[;]" (2) "[b]ecause Plaintiff was and is a registered patent attorney and knew of his affirmative duty of candor to the USPTO, intent to defraud the USPTO may be inferred from the evidence[;]" and (3) "Plaintiff deliberately withheld information he knew to be material to patentability from the USPTO and failed to properly disclose [the] same during prosecution of the [P]atent [A]pplication. Plaintiff violated his duty of candor to the USPTO [and] committed fraud on the USPTO[.]" *Id.* at ¶¶ 12-14 Defendants' argument is meritless.

To find a patent unenforceable based on inequitable conduct, the Court must find the patent applicant intended to deceive the USPTO. *In re OxyContin Antitrust Litig.*, 530 F. Supp. 2d 554, 560 (S.D.N.Y. 2008) (Stein, J.). As the Federal Circuit has explained:

> Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. However, to meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence. Indeed, the evidence must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances. Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.

*Therasense, Inc. v. Becton, Dickinson & Co.*, 648 F.3d 1276, 1290-91 (Fed. Cir. 2011) (internal quotation marks and citations omitted; emphasis in original). "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference." *Id.* at 1290 (internal quotation marks and citation omitted; emphasis in original).

Here, however, Defendants have presented no evidence that Plaintiff acted with intent to deceive. For example, while Defendants claim that intent to defraud the USPTO can be inferred from the evidence, simply stating intent to defraud can be inferred because Plaintiff was a registered patent attorney is not sufficient to meet the clear and convincing standard. In any event, Plaintiff has presented evidence to suggest that he was a patent agent, not a patent attorney, at the time the patent application was filed. *See* P's Opp. at Conclusions of Law ¶¶ 9-15. As such, there is a "reasonable inference to be drawn from the evidence as to [Plaintiff's] intent other than deceptiveness." *Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*, 833 F. Supp. 2d 321, 332 (E.D.N.Y. 2011) (Spatt, J.). Accordingly, Defendants have not sufficiently met the requisite clear and convincing standard for the intent to deceive element for

their claim of inequitable conduct. The Court therefore finds the '434 Patent is not unenforceable based on inequitable conduct.

## CONCLUSION

Based on the foregoing, the Court finds no liability on the part of Defendants for any of Plaintiff's causes of action as Plaintiff has failed to meet his burden of proof by a preponderance of the evidence. The Court also dismisses all of Defendants' counterclaims as Defendants have failed to meet their burden of proof by clear and convincing evidence. The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: September 28, 2015
Brooklyn, New York